SUMMERS APPLIANCE CO. ET AL *v.* GEORGE'S GAS COMPANY, INC. ET AL

5-4464                                   424 S. W. 2d 171

Opinion delivered February 19, 1968

*Warren & Bullion,* for appellants.

*Courtney Crouch, Boyce Love* and *Roy Finch,* for appellees.

LYLE BROWN, Justice. Summers Appliance Co. and the six other appellants are holders of Class 1 permits issued by the Arkansas Liquefied Petroleum Gas Board. They are LP gas distributors in an area comprising six counties in Northwest Arkansas. George's Gas Co., Inc., was granted a Class 1 permit by the LP Gas Board. George proposes to operate in the same general area. The Board was affirmed on appeal to the circuit court. Appellants contend that the LP Gas Act requires a determination of public convenience and necessity as a prerequisite to the issuance of the permit and that no such showing was made.

The business of distributing butane and propane gas (liquefied petroleum substances) is substantial and statewide in Arkansas. Because of the dangers inherent in the handling of those substances we have had a safety feature law since 1939. Our present law is Act 31 of 1965, Ark. Stat. Ann. §§ 53-701-34 (Supp. 1967).

The requirements for a Class 1 permit set up detailed and rigid specifications covering every phase of handling, storage, and distribution. A certificate of competency must be renewed annually. In addition to the predominant safety features of the act there is a provi-

sion which was inserted in 1959 and carried over into Act 31. It is significant to this litigation:

> § 53-723 (A) (7) . . . . "In determining whether to grant a Class 1 Permit, the Board shall take into consideration the convenience and necessity of the public."

The appellants urge this court to interpret the quoted language "to require the same proof of public convenience and necessity for a permit to sell and distribute butane and propane gas as is required to sell natural gas." That necessitates a comparison of certain phases of the two laws, namely, the Public Utilities Act under which natural gas companies operate, and the Act under which butane and propane distributors are licensed.

1. *Laws Regulating Natural Gas Companies.* The Public Service Commission is vested with the power, jurisdiction, and duty to "supervise and regulate every public utility in this Act defined." Ark. Stat. Ann. § 73-202 (Repl. 1957). The antecedent section (definitions) refers to public utilities as including those who furnish *gas* to the public for compensation. However, from a study of the entire chapter, the amendments thereto, and the rules and regulations of the PSC, it is clear that those laws and regulations presently govern *natural gas*. It is mandatory upon those companies to make a showing of public convenience and necessity and obtain a certificate from the PSC evidencing the public need. Ark. Stat. Ann. § 73-240 (Supp. 1967). That has been the law at least since Act 324 of 1935. When it is proposed to operate a new public utility in an area already served, the applicant must show either "(a) that the present service is inadequate; or (b) that additional service would benefit the general public; or (c) that the existing [facility] has been given an opportunity to furnish additional service as may be required." *Santee* v. *Brady*, 209 Ark. 224, 189 S. W. 2d 907 (1945).

2. *The Law Regulating the LP Gas Business.* Act 31, heretofore cited, contains all the statutory law per-

taining to LP gas and deals exclusively with that subject. It deals almost entirely with two subjects, namely, the financial stability and technical competency. Suffice it to say that we are dealing with one of the most comprehensive codes of law and regulations in force in this State. Those provisions governing the granting of a Class 1 permit will later be discussed.

The Legislature has not declared the LP gas business to be a public utility. It has not imposed on LP gas distributors the mandatory duty to obtain a certificate of public convenience and necessity. It has merely directed the LP Gas Board to *consider* public convenience and necessity. That phrase is not so rigid in meaning as to require that it be interpreted to mean the same thing in every legislative act in which it is used. In the Public Utilities Act it is used with reference to those utilities— natural gas companies, public carriers, and electric power companies—operations devoted to public use to the extent that their use is thereby granted to the public. So much so that matters such as their rates, their territories, and methods of detailed operation must be supervised by the sovereign. In turn, those utilities enjoy exclusive privileges which the Legislature has declared in the public interest, such as long-term franchises, the right of eminent domain, and security of their enormous investment from unnecessary competition.

The legislative directive that the LP Gas Board *consider* public convenience and necessity was not intended to vest in the Board the power to regulate competition in a field of private endeavor. There are many commodities just as inherently dangerous as butane and propane. We need only point to dynamite, drugs, and gasoline as some examples. Stringent regulations governing the manufacture and distribution of those items are required and justified under the police power. When it is considered necessary for the public welfare to remove those pursuits from the field of free enterprise, it should certainly be spelled out and justified.

The mere insertion of one sentence, in a code .devoted entirely to safety and competence, directing the administrative board to "consider public convenience and necessity" is not sufficient.

Having determined that we are not dealing with a declared public utility, we turn to the application of the term "public convenience and necessity" as it is used in the LP Act. Public utilities do not have a monopoly on the use of the phrase. All authorities recognize the words "convenience" and "necessity" as being relative and elastic, rather than absolute. We conclude that § 53-723 (A) (7) directs the Gas Board to consider the public welfare *within the scope of its authority* under Act 31 and the approved regulations. Here are some of the many "musts" to be met by a Class 1 applicant who desires to enter all phases of the liquefied petroleum gas business:

Furnish evidence of his financial condition, character, and ability to engage in the business; file a certificate of intended insurance which covers six fields of possible liability; all his employees in charge of operations, servicemen, installation men, and truck drivers to pass an examination and receive a certificate of competency; file a current financial statement prepared by a public accountant; provide a bulk storage capacity of not less than 15,000 water gallons, the location to be approved by the Board in advance; provide all necessary equipment satisfactory to the Board; provide approved unloading facilities; furnish a storage container of not less than 1,000 gallons; submit an inventory of all trucks and that equipment must be inspected and approved; provide service station facilities acceptable to the Board; provide blueprints for all gas containers for the Board's examination and approval; and the products he proposes to handle to be approved by the Board.

The discharge of the enumerated responsibilities, as well as the others pertaining to issuing a Class 1 per-

mit, are not purely ministerial acts. Most of them require the exercise of considerable judgment and discretion. In making those judgments the Legislature directed the Board to consider the public welfare in the fields of public safety and the stability of the applicant.

We have not arbitrarily substituted the phrase "public welfare" for the term "public convenience and necessity." The latter phrase has been described by this court as "what will conduce to the general public welfare." *Arkansas Elec. Coop.* v. *Ark-Mo Power Co.*, 221 Ark. 638, 255 S. W. 2d 674 (1953). The safety of the public and the assurance that the applicant can render competent service are by Act 31 made primary; the right of the individual to possess a permit is declared secondary.

The Board certified to the circuit court that it considered the matter of public convenience and necessity and that its determination on that point, along with all other matters set forth in the transcript, favored the granting of George's permit. From the record we conclude that the Board applied the same construction to the convenience and necessity clause as outlined in this opinion. That assumption is based on the absence of any testimony proffered by George's in line with the public utility rule of convenience and necessity.

Since we do not apply the construction urged by appellants, we do not reach the attack by appellees on the constitutionality of the convenience and necessity provision.

Affirmed.