GRAY'S BUTANE WHOLESALE, INC. *v.*
ARKANSAS LIQUEFIED PETROLEUM
GAS BOARD

5-5446                                    463 S. W. 2d 639

Opinion delivered March 1, 1971

70

*Wright, Lindsey & Jennings,* for appellant.

*Paul Schmidt* and *Warren Bullion,* for appellee.

FRANK HOLT, Justice. Appellant corporation applied for a Class 1 Permit to operate a retail liquefied petroleum gas outlet designed to service an area of 2,490 square miles (later revised to 2,060 square miles) surrounding Brinkley, Arkansas. The organizer and principal stockholder of appellant corporation is Mr. Edwin Gray who is also the owner and operator of other liquefied petroleum businesses and a former member of appellee Board. Mr. Gray testified in behalf of appellant corporation, and two witnesses testified in behalf of protestants, at a hearing before the Board which resulted in an order denying the application. Appellant then appealed by filing with the circuit court a petition to review the action of the Board. From a judgment by the circuit court affirming the order of the Board, appellant brings this appeal.

The thrust of appellant's argument for reversal is basically that there is no substantial evidence to support the findings of the Board. It is true that orders of administrative boards are to be reversed if not supported by substantial evidence of record [Ark. Stat. Ann. § 5-713

(Supp. 1969)]; however, the position of the Board is simply that appellant "has not submitted sufficient evidence of adequate safeguard and protection of the public to justify the granting of a permit. . . as applied for."

Two of the Board's findings, for example, are:

The Board does not believe that the safety of the public is adequately protected and safeguarded by one serviceman in an area of two thousand and sixty square miles.

\* \* \*

Applicant would start business with one or two trucks.

Appellant first attacks these findings on the basis that there is no evidence that one serviceman and one or two trucks could not adequately service the area. But this evades the real issue; there is no burden on the Board to present evidence that the proposed personnel and equipment are not adequate, rather it is appellant's burden to demonstrate to the satisfaction of the Board that the operation will assume safety to the public. We have observed on a prior occasion: "The safety of the public and the assurance that the applicant can render competent service are by Act 31 [Ark. Stat. Ann. §§ 53-701—729 (Supp. 1969)] made primary; the right of an individual to possess a permit is declared secondary." *Summers Appliance* v. *George's Gas Co.*, 244 Ark. 113, 424 S. W. 2d 171 (1968).

Appellant then argues that there is no evidence that it intends to begin business with only one serviceman, particularly in light of Mr. Gray's testimony that he can "move in" qualified personnel, as the needs arise, from other gas outlets which he owns and operates in the state. However, this testimony reflects that business would be commenced with "a serviceman"; it was never indicated that more than one serviceman would initially be employed. Again, the asserted argument incorrectly imposes some illusive type of burden upon the Board, as a condition of denying the permit, to

offer proof of the absence of that which it is properly appellant's duty to demonstrate the presence of—*i. e.*, adequate safeguard and protection of the public. The possibility of moving in qualified personnel from other outlets lacks significance unless it is shown this could be accomplished without jeopardizing the safety of its other operations. As the Board correctly found, this showing was not made.

Similarly, appellant contests the finding that:

The Board does not consider the safety of the public adequately protected by the employment of a safety supervisor who does not live in the district and who flies into the district from some other district even though the flight may be made in one hour.

Appellant argues "there is absolutely no evidence in the record that the safety of the public would be in any manner affected by the residence of the safety supervisor." Once again the burden is appellant's to demonstrate the contrary. Moreover, it does not seem unreasonable that the Board should be skeptical about the efficiency and effectiveness of a "Safety Supervisor," as described in § 53-723 (A) (6) (Supp. 1969), who could be on the scene only after a one hour flight plus time to and from the airport, should weather and availability of air transportation permit.

The tenor of appellant's argument appears to reflect an underlying presupposition that mere compliance with the mandatory provisions of the Liquefied Petroleum Gas Board Act [§§ 53-701—729] *ipso facto* assures safe operation and, therefore, absent a "clear and convincing showing of lack of safety," entitles an applicant to a permit. Appellant expressly states:

The fulfillment of the mandatory requirements in and of itself assures that [appellant] will conduct a safe, efficient retail outlet. This does not mean to imply that the Liquefied Petroleum Gas Board has no investigatory responsibilities after the mandatory requirements have been fulfilled. The Act clearly provides to the contrary. It is submitted, however, that compliance with the mandatory provi-

sions forms a solid base for a safe operation. A denial of a permit after compliance with the mandatory provisions should be done only upon a clear and convincing showing of lack of safety. Compliance with the mandatory provisions of the Act by itself entitles [appellant] to the permit for which [it] has applied, because there was no showing of lack of safety at the hearing before the Board.

This position is not well founded for two reasons. First, as previously indicated, it erroneously shifts onto the Board the burden of establishing that the proposed retail operation would be detrimental to public safety. Secondly, it significantly narrows, if not completely divests, the Board of its recognized discretion which is so necessary for its effective functioning and proper discharge of its responsibilities. It appears that the members of the Board are experienced in the liquefied petroleum industry and possess an expertise with reference to their duties and responsibilities. If mere compliance with all mandatory requirements were sufficient to entitle an applicant to a permit, then the Board would have no discretionary powers and, therefore, there would be no need for the Board. We have said in *Summers Appliance* v. *George's Gas Co., supra:*

The discharge of the enumerated responsibilities, as well as the others pertaining to issuing a Class 1 Permit, are not purely ministerial acts. Most of them require the exercise of considerable judgment and discretion.

Of course, this is not to be interpreted as granting the Board license to arbitrarily and capriciously exercise its powers.

We do not think that the Board abused its discretion in the case at bar, nor do we find merit in appellant's contention that the Board's findings were not supported by substantial evidence.

Affirmed.

JONES, J., dissents.