MAZELLE BITTLE AND I. G. BITTLE *v.* ALLEN SMITH

6216                                        491 S.W. 2d 815

Opinion delivered March 26, 1973

*Williams & Gardner* and *Lynn Wilson,* for appellants.

*Ike Allen Laws,* for appellee.

CARLETON HARRIS, Chief Justice. Mazelle Bittle, one of the appellants herein, was injured on November 24, 1967, while a passenger in an automobile being driven by her son, this car colliding with the car owned by appellee, Allen Smith. Mrs. Bittle, together with her husband, appellant I. G. Bittle, instituted suit against Smith seeking damages. Mrs. Bittle asserted various disabling injuries and Mr. Bittle sought damages for the loss of consortium, companionship, care and services of his wife. Mr. Smith answered with a general denial. On trial, the jury returned a verdict of $1,500 for Mrs. Bittle, but nothing for her husband. Thereafter, appellants moved to set aside the verdict and asked the court to grant a new trial, it being appellants' position that under Ark. Stat. Ann. § 27-1901 (Repl. 1962), the verdict should have been vacated because it was not sustained by sufficient evidence, and a new trial should have been granted under Ark. Stat. Ann. § 27-1902 since the amount of actual pecuniary

loss sustained was in excess of the verdict. The court denied this motion and from the order of denial, appellants bring this appeal. For reversal, it is simply asserted that "The trial court erred in not setting aside the verdict and granting a new trial."

Actually, the issue is Ark. Stat. Ann. § 27-1902, which provides as follows:

> "A new trial shall not be granted on account of the smallness of damages in an action for an injury to the person or reputation, nor in any other action where the damages shall equal the actual pecuniary injury sustained."

Appellants vigorously contend that the uncontradicted[1] evidence reflects an actual pecuniary loss in excess of $1,500 and that accordingly, they are entitled to a new trial. Medical bills totaling $609.55, occasioned by the wreck, are admittedly uncontradicted, and appellants rely on the contention that Mrs. Bittle was unable to work for twenty-six weeks and three days, amounting to a pecuniary loss in wages of $2,103.71. Adding this amount to the medical bills makes a total of $2,713.26, which appellants assert to be the actual pecuniary loss sustained.

Appellants argue that the situation presently before us is very similar to that presented in the case of *Law* v. *Collins*, 242 Ark. 83, 411 S.W.2d 877, the appeal in both cases being based on Ark. Stat. Ann. § 27-1902, except that in *Law* the trial court had granted a new trial while here it has refused to grant a new trial. We might here state that this one fact makes a vast difference for the granting or refusing of a new trial is a discretionary act by the court, and we only reverse where an abuse of discretion is clearly shown. In other words, since the trial court refused to grant a new trial, appellants must demonstrate that the court abused its discretion in order to prevail in this case.

We are unable to say that the Yell County Circuit Court abused its discretion, and in making this finding,

---

[1]No evidence was offered by appellee.

we give no consideration to a fall sustained by Mrs. Bittle on a parking lot in December, 1968, and injuries sustained when a box fell on her head in 1970, mentioned by appellee in his brief, since these events did not occur until a number of months after the contended loss of working time heretofore set out.

A review of the medical evidence is in order. Dr. D. H. Martin of Ola testified that Mrs. Bittle came to his clinic early on the morning of November 24, stating that she had been in an automobile accident, and complaining of discomfort to the right side of her head and left hip. She was admitted to the hospital at Danville and Dr. Martin testified that he found no external evidence of injury and, after x-rays, no findings of any bone pathology. Her left hip was bruised, but there were no bone fractures, nor were there any bruises on her head. About forty-eight hours later she was discharged and went home, feeling better, but still with some headaches. On December 2, 1967, she again came to his office complaining of feeling "addled" at times and she had bruises on the side of her left leg near the hip; also, she complained of headaches and was given darvon to ease pain. At his direction, she returned one week later, still complaining of headaches and the doctor referred her to a neurologist, Dr. William K. Jordan of Little Rock. Martin saw her occasionally through 1968, and stated that he last saw her on June 17, 1971, when "she only wanted her workmen's compensation papers filled out, and I suggested to her that we have Dr. Jordan do that, since he was treating her neurologically."[1-a]    On January 24, 1968, Dr. Martin wrote a note to Morton's Frozen Foods, employer of Mrs. Bittle, that Dr. Jordan recommended that Mrs. Bittle not work for approximately three months, and on April 18, 1968, Dr. Martin gave Mrs. Bittle a copy of a letter to him from Dr. Jordan's secretary, stating that Dr. Jordan wanted Mrs. Bittle to take four months off from work. Several other notes from Dr. Martin addressed "To Whom It May Concern" are also in the record with reference to particular days that Mrs. Bittle was to see Jordan, and accordingly would not be able to work.

---

[1-a] It is not clear what this referred to.

Dr. Jordan, who first saw Mrs. Bittle on December 22, 1967, testified that she described the automobile wreck and from his examination, he considered that her problem was probably a "post-traumatic cerebral syndrome".[2] He said that the symptoms given originally were not the same as those subsequently stated. The doctor described various tests that were given and mentioned that he had prescribed mebaral which sometimes helped patients with post-traumatic cerebral syndromes. Jordan stated that he advised Mrs. Bittle, on February 16, 1968, to stay away from work for four months, feeling that she would have a more rapid recovery by not working and remaining quiet. "My main reason in suggesting that, though, was because either she or Dr. Martin told me that she continued to have her symptoms, and I thought that complete rest might help her. My main notion was therapeutic." The doctor's testimony is very lengthy and comprehensive and he mentions a number of possibilities but, the issue being as previously stated, there is no necessity to detail this testimony. He did state that in his opinion she had no permanent disability, and he said he considered there was a causal connection between the accident and her condition, "assuming the validity of the accident and the facts and so forth as they were given to me."

Though not considering the subsequent accidents previously referred to, we think there was still evidence from which the jury could have concluded that Mrs. Bittle's disabilities were not entirely due to the automobile accident of November, 1967. For instance, Dr. James Pennington of Ola who had been Mrs. Bittle's physician for several years, when asked about her condition "health wise" prior to the date of the accident, replied, "Well, she had had some female trouble and low back strain, and I believe that's the main things that I have treated her for."

Dr. Martin mentioned that since November, 1967, he had treated her for female problems,[3] a respiratory infec-

[2]Post-traumatic cerebral syndrome is an illness characterized by symptoms which follow an injury to the head not severe enough to cause a concussion.

[3]The doctor mentioned that he referred her to a gynecologist. This was apparently a Dr. Wallace. From the record:

"A. April 7, 1969. Dr. Wallace wrote me a letter, 'Dear Dr. Martin: Your patient, Mrs. Bittle, saw me following her DNC and cortization.

tion, and he mentioned that due to her various symptoms, it was suggested that she take tests to determine if she was a diabetic. Dr. Jordan mentioned that Mrs. Bittle had told him that she had had her thyroid removed and had had several female operations. Probably more important than these matters is the fact that Mrs. Bittle, a few days after the accident, returned to her job and worked for two weeks and the jury might well have considered that if she were able to work for this length of time so soon after the accident, the difficulties mentioned could have had their origin elsewhere. Let it be remembered that it is within the province of the jury to determine fact situations; they were not required to believe the testimony of any witness, and particularly that of the Bittles since they were interested parties, and their testimony, under the law, is considered disputed as a matter of law. *Turchi* v. *Shepherd,* 230 Ark. 899, 327 S.W. 2d 553 and *Conway* v. *Hudspeth,* 229 Ark. 735, 318 S.W. 2d 137.

The trial court, of course, observed all of the witnesses and was in a paramount position to determine whether the verdict was unjust. Since a pecuniary loss exceeding the amount of the verdict (due to the collision) was not definitely established, we are unable to say that the trial court erred in refusing to set aside the verdict. No other error is suggested, and when the evidence shows that a plaintiff is entitled to recover substantial damages, and does obtain a substantial verdict ($1,500 constituting substantial recovery), a judgment will not be reversed because of inadequacy if there be no other error. *Smith* v. *Arkansas Power & Light Company,* 191 Ark. 389, 86 S.W.2d 411.

Affirmed.

---

She had almost a complete occlusion of the cervical canal, causing her bleeding. There was no evidence of cancer. I did a cortization and inserted a plastic tube to be left six weeks. ...'

Q. Doctor, what is a DNC?

A. The cervical canal is dilated and the uterus is scraped."