# ZERO WHOLESALE GAS CO., INC.
## *v.* June STROUD

77-182                                    571 S.W. 2d 74

## Opinion delivered July 17, 1978
### (Division II)
[Supplemental Opinion on Denial of Rehearing October 9, 1978.]

*Atchley, Russell, Waldrop & Hlavinka,* by: *Victor Hlavinka,* for appellant.

*Young, Patton & Folsom,* by: *Damon Young,* and *Hubbard, Patton, Peek, Haltom & Roberts,* by: *William L. Peek, Jr.,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellee sued appellant Zero Wholesale Gas Company and Butane Gas of Hope to recover for damages to her restaurant arising out of a gas explosion and fire which occurred on December 23, 1975, on premises owned by Butane Gas Company of Hope, Inc., and on which it operated a propane gas storage yard. Appellee alleged that both defendants were guilty of negligence which was the proximate cause of her damages and that they were strictly liable for miscarriage of an ultrahazardous activity. The case was submitted to the jury on both theories. The jury answered interrogatories finding that neither party was guilty of negligence, but that appellant was guilty of miscarriage of an ultrahazardous activity which was the proximate cause of appellee's damage. The verdict fixed appellee's damages at $26,500. Appellant urges three points for reversal, but all are premised upon the same basic contention, i.e., that the evidence failed to show any basis for a finding of miscarriage of an ultrahazardous activity by it. One point for reversal relates to the giving of instructions on that theory, another to the existence of evidence to support the verdict and the third to the applicability of the theory to the facts.

The fire and explosion occurred when a delivery of

propane gas was being made by appellant to the storage yard of Butane Gas of Hope in a tractor-trailer transport truck, driven and operated by Francis Garland (Pat) Reeves. When the transport truck arrived, two of the delivery trucks owned and operated by Butane Gas were being filled from storage tanks at the yard in order to make deliveries to retail customers.

Appellee called Harry Burns, Director for the Liquified Petroleum Gas Board for Arkansas as a witness. He testified that both propane and butane gas are inherently dangerous, highly flammable products that require skill in handling. On cross-examination he said that propane is a substance that is in common usage in areas where natural gas is not available and that the likelihood of injury or damage is greatly reduced if the utmost care is used. According to Burns, whenever a hole develops in a propane vessel, there is a good deal of clouding and spewing which is attributable to vaporization. Burns said that propane tends to vaporize at any temperature above 44 degrees below zero and that at about 50 degrees Fahrenheit, there is 60 to 80 pounds per square inch pressure in propane. Burns investigated the fire at the storage yard two or three hours after it occurred. At that time appellee's restaurant next to the storage yard had been completely consumed by fire. He found that the gas company's tank No. 1 became overheated and ruptured and that its head had been propelled across Highway 67 and into an adjacent field by expansive forces produced by fire; tank No. 2 was off its support but remained on the premises; tank No. 3 was ruptured but was still in the area; the fourth tank was ruptured and severely distorted due to overheating but remained on its supports; a fifth tank remained intact on its supports, but was severely distorted from heating of the metal. Burns found a large tanker type transport truck owned by appellant in the storage yard. It had been brought there to deliver propane gas to the storage yard by Pat Reeves, an employee of appellant.

A properly operating relief valve on a transport truck belonging to appellant was found open by Burns. The cab of the truck was severely damaged and several tires were burned away. A hose that was attached from the discharge connection of the transport truck to the discharge or field connection

of the 30,000 gallon tank bore indications of having been subjected to flame and intense heat. He found the hose ruptured.

A pump is used to force gas from the transport truck into a storage tank. The pump is operated by a power take-off with which the transport truck is equipped. Burns said that Reeves stated that he had been in the process of engaging the power take-off when the explosion occurred. Burns testified that there had apparently been a discharge of gas from the hose but there would be no fire at the point where the gas was escaping. He stated that the velocity of the gas would have to approximate seven feet per second before a flame would burn.

Reeves testified that he had been using the transfer hose for two or three years. It was a regulated propane hose with working pressure rating of 350 pounds per square inch and a minimum bursting pressure rating of 750 pounds per square inch. Reeves said that he had left the truck motor running according to standard procedure in order to operate the pump, had hooked up the power take-off shaft, had fastened his hose to the storage tank and opened three valves, but had not opened a valve which, when closed, prevented the flow of gas into the hose when "the excitement started," while he was engaging the clutch to operate the power take-off. He said he turned and immediately saw fire 40 to 50 feet from him in the pump area where one of the delivery trucks had been loading. He described the fire as being a large hot one which occurred in a flash. Reeves ran down the road to a point of safety where he was joined two to four minutes later by Carlton Terry, the driver of one of the delivery trucks.

At the time of the "excitement" Reeves had opened a valve which would permit gas to flow from the 30,000 gallon storage tank, but he had not attached a vapor line which equalized the pressure between the storage tank and the transport tank, because this is the last step in the process of transferring the gas from the truck to the storage tank. Because of the presence of the delivery trucks, Reeves was unloading from a place he did not usually park.

Carlton Terry said that he immediately fled the scene when he heard the explosion and, as he was running down

the road, he looked back and saw fire coming from the front of appellant's truck. Monty Malone, who lived in a mobile home 25 yards from the storage tanks looked out his window when he heard something similar to a sonic boom. He said he saw fire coming from beneath appellant's truck near the rear of the trailer on the driver's side. He said that, while he had seen gas dripping from the hose on the truck, he did not see flame shooting out from it.

According to the owner of Butane Gas Company of Hope, when he and his employees went to the place the delivery truck had been left to close off or cap valves to prevent the outflow of fuel, there was gas flowing out of the relief valve on appellant's transport truck. He testified that the valve had been closed, but reopened and was left open, because it was better to have the fuel burn than to have raw fuel in the atmosphere. He said that the fuel from the transport truck burned for two or three days. He found the 30,000 gallon tank empty and said that it had contained 13,000 to 14,000 gallons before the fire.

We do not agree with appellant's contention that the delivery of propane gas is not, as a matter of law, an ultrahazardous activity. Appellant correctly points out that we have stated that an activity is ultrahazardous if it (a) necessarily involves a risk of serious harm to the person or chattels of others which cannot be eliminated by the exercise of the utmost care *and* (b) is not a matter of common usage. See *Dye* v. *Burdick,* 262 Ark. 124, 553 S.W. 2d 833; *North Little Rock Transportation Co.* v. *Finkbeiner,* 243 Ark. 596, 420 S.W. 2d 874. We cannot say, as a matter of law, that the delivery of propane gas does not involve a risk of serious injury to persons or damage to property which cannot be eliminated by the exercise of ordinary care. The testimony of Burns not only fails to support this argument, it actually tends to support a contrary view. He said that the *likelihood* of injury is greatly *reduced* if the utmost care is used. This does not mean that the risk could be *eliminated* by the utmost care. See *McLane* v. *Northwest Natural Gas Co.,* 255 Ore. 324, 467 P. 2d 635 (1970). In view of this testimony, the question as to factor (a) was for the jury.

Appellant also asks us to hold that delivery of propane gas is, as a matter of law, a matter of common usage, largely because propane gas is a substance in common usage. This argument overlooks the fact that the *activity* must be of common usage. A witness testified that delivery of propane gas is a routine procedure, but there is no evidence to indicate that the *delivery* of propane gas is a matter of common usage. If it is, then the existence of the Liquified Petroleum Gas Board created by Ark. Stat. Ann. § 53-701 et seq (Repl. 1971) might be subject to question from the standpoint of both utility and constitutionality. See *Gray's Butane Wholesale, Inc. v. Arkansas Liquefied Petroleum Gas Board*, 250 Ark. 69, 463 S.W. 2d 639; *Summers Appliance Co. v. George's Gas Co.*, 244 Ark. 113, 424 S.W. 2d 171.

We do not agree with appellant that the standard of care for a case such as this was established as ordinary negligence by such cases as *Arkansas Louisiana Gas Co. v. Stracener*, 239 Ark. 1001, 395 S.W. 2d 745 and *Dixie Furniture Co. v. Deason*, 226 Ark. 742, 293 S.W. 2d 706. In *Stracener* and *Deason* the question of the standard of care was not really an issue. The statement from the opinion in *Stracener* on which appellant relies was made in holding that violation of a company regulation by its employee constituted a basis of liability. We held that the rule did not establish a standard of care and that there was no indication that the explosion involved would not have occurred if the employee had complied with the rule. In *Deason*, the issues involved questions of negligence and contributory negligence. The basic issue involved was a question whether a plaintiff gas company employee or a furniture company employee disconnected a stove from a butane gas pipe and left the pipe uncapped in the process. The issue of contributory negligence turned on the determination of the question whether the injured parties were negligent in failing to discover that the pipe was uncapped.There was also a question whether the failure to recap the pipe was the proximate cause of the injury.

We do not take other cases cited by appellants, such as *Ozark Industries, Inc. v. Stubbs Transports, Inc.*, 351 F.S. 351 (W.D. Ark. 1972) and *Skelly Oil Co. v. Holloway*, 171 F. 2d 670 (8 Cir., 1948) to be applicable to this case. In the former, the

question arose on a motion for summary judgment. The trial court there granted the summary judgment, holding that the transportation of gasoline in tank trucks from distributing centers on the highways to filling stations was a common everyday occurrence which did not, as a matter of law, constitute an ultrahazardous activity. The action was brought to recover damages allegedly caused by the overturning of a truck transporting gasoline and the resulting spilling of gasoline in the roadside ditch. The plaintiff had alleged that this gasoline then was carried by percolated waters into a spring used by the plaintiff for raising fish and that fish were killed as a result.

The *Holloway* case did involve propane gas. The negligence alleged was stated in specific acts, such as: failure of the employees of the supplier to properly inspect the distribution system in the dwelling house of the plaintiffs and to find and repair all leaks; the connection of plaintiff's appliances to the gas distribution system and lighting a hot water heater while gas was escaping; informing plaintiffs that there were no leaks and use of the appliances and system was safe; and failure to warn the plaintiffs of escaping gas. A judgment in favor of the plaintiffs was affirmed. The only question was whether there was substantial evidence to support the finding of negligence on the part of the supplier. The court stated that there was no dispute about the law of the case, i.e., that one distributing gas to the public must, in view of the highly dangerous character of the gas and its tendency to escape, use a degree of care in the *installation and maintenance of conduits and appliances* under its control commensurate with the danger or risk which is its duty to avoid, but was not liable as an insurer. The evidence to support the finding of negligence was held to be substantial.

Common usage is defined as an activity customarily carried on by the great mass of mankind or by many people in the community. Restatement of the Law (2d), Torts § 520 (d), Comment i. In a case holding that the storage of gas is an abnormally dangerous activity, it was pointed out that distribution of gas in mains and pipes in streets and houses is a matter of common usage. *J. McLane* v. *Northwest Natural Gas*

*Co.,* supra. See also, Restatement of the Law (2d), Torts, § 520 (d), Comment i.

We conclude that there was no error in the submission of the case to the jury on the theory of absolute liability for miscarriage of an ultrahazardous activity and that the verdict is supported by substantial evidence.

On cross-appeal, appellee contends that we should reverse the judgment and render judgment for $48,346, the lowest estimated amount of her total damage as shown by the evidence in her behalf. But this evidence consisted almost entirely of opinion testimony, which was certainly not binding on the jury. Ark. Stat. Ann. § 27-1902 (Repl. 1962) permits, but does not require, that a new trial be granted where damages awarded do not equal the pecuniary injury.

In *Bittle* v. *Smith,* 254 Ark. 123, 491 S.W. 2d 815, we held that there was no abuse of discretion in the trial court's denial of a motion for new trial on this ground, "since a pecuniary loss exceeding the amount of the verdict was not *definitely* established." Opinion evidence does not definitely establish the amount of a pecuniary loss. Furthermore, here, as in *Bittle,* a substantial part of the evidence on damages was the testimony of the plaintiff June Stroud. As indicated in *Bittle,* her testimony cannot be taken as undisputed. We find no error in this respect.

The judgment is affirmed on appeal and cross-appeal.

We agree: HARRIS, C.J., and BYRD and HOLT, JJ.

Supplemental Opinion on Petition for
Rehearing delivered October 9, 1978

JOHN A. FOGLEMAN, Justice. On petition for rehearing, appellant asserts that we erred in holding that the evidence was sufficient to show that the delivery of propane gas is an ultrahazardous activity. We should clarify the opinion in that respect. Harry Burns, Director named by the Liquefied Petroleum Gas Board, testified that propane gas is an inherently dangerous, highly flammable product that requires skill in handling. He also testified that the likelihood of injury or damages is greatly reduced if the utmost care is used. We reiterate that this testimony tends to show that the risks of the activity in which appellant was engaged cannot be eliminated by the use of the utmost care. This was sufficient to present a jury question on this element of the definition of an ultrahazardous activity.

Appellant also asserts that the burden of proving that the delivery of propane gas is not a matter of common usage was not met by appellee. In the course of our opinion we remarked that there was no proof that it was a matter of common usage. We treated the matter as appellant argued it, however, and did not search the record for evidence on this point. Appellant argued that propane gas was a *substance* of common usage, so the second element of the definition of ultrahazardous activity has not been met. Appellant also argued that, "[s]ince the undisputed evidence in the record below establishes that delivery of propane and butane are matters of common occurrence, the same rationale would preclude submission of this case to the jury on the theory of absolute liability." The thrust of appellant's argument is covered by these two statements. The first contention was adequately treated in our original opinion. The second is based upon the testimony of Carlton Terry that he had been delivering gas for 16 years, making from 10 to 30 deliveries per day and that of Jerry Hatfield that he had seen the delivery of butane and propane gas many times. Both were employees of Butane Gas of Hope, a company engaged in the business of delivering propane gas to retail customers. The regular duty of both these employees was to deliver gas. This testimony on their part is not really substantial evidence that delivery of propane gas is a matter of common usage.

Burns testified that the personnel of a company licensed as a dealer in butane and propane gas are examined by the Liquefied Petroleum Gas Board. As a matter of fact, both Hatfield and Terry were licensed by the board to carry on the loading and unloading of these fuels. These licenses, or "certificates of competency," are reviewed annually. See Ark. Stat. Ann. § 53-723 (A) (6) and (B) (Repl. 1971). There is a State Liquefied Petroleum Gas Code covering the storage and handling of liquefied petroleum gases. Ark. Stat. Ann. § 53-701 et seq. The requirements of the Liquefied Petroleum Gas Board Act have been taken to be directed primarily to public safety. *Gray's Butane Wholesale, Inc.* v. *Arkansas Liquefied Petroleum Gas Board*, 250 Ark. 69, 463 S.W. 2d 639; *Summers Appliance Co.* v. *George's Gas Co.*, 244 Ark. 113, 424 S.W. 2d 171.

We did not mean to say that the burden of proving that

the activity was one of common usage rested upon appellant. The burden of proof that it was not one of common usage was on appellee, in spite of the fact that this required her to make negative proof. *Austin* v. *Dermott Canning Co.*, 182 Ark. 1128, 34 S.W. 2d 773. The "burden of evidence," or of "going forward," is more easily discharged when the proposition is a negative one than when it is a positive one, and the burden of evidence will shift when the evidence, even though circumstantial, renders probable the existence of the negative fact. *Higgins* v. *Salewsky*, 17 Wash. App. 207, 562 P. 2d 655 (1977); *In re Sandusky's Estate*, 321 Ill. App. 1, 52 N.E. 2d 285 (1943); *Schmisseur* v. *Beatrie*, 147 Ill. 210, 35 N.E. 525 (1893); *Vigus* v. *O'Bannon*, 118 Ill. 334, 8 N.E. 778 (1886). The rule is succinctly stated at p. 338, 30 Am. Jur. 2d, Evidence, § 1163, viz:

> * * * Full and conclusive proof is not required where a party has the burden of proving a negative, but it is necessary that the proof be at least sufficient to render the existence of the negative probable, or to create a fair and reasonable presumption of the negative until the contrary is shown.

We consider the evidence in this case, as to requirements for handling the gas, to be sufficient to have shifted to appellant the burden of producing evidence that the delivery of propane gas was a matter of common usage. As we have pointed out, there was no substantial evidence of this fact.

The petition for rehearing is denied.