JOHNSON & JOHNSON, d/b/a
CHICKOPEE MFG. CO. and Ralph THOMPKINS
*v.* FIRST NATIONAL BANK IN LITTLE
ROCK, Guardian of the Estate of Eli ESAU
and NORTHWESTERN NATIONAL INSURANCE
COMPANY

CA 79-215                                    594 S.W. 2d 870
Court of Appeals of Arkansas
Opinion delivered February 27, 1980
Released for publication March 19, 1980

*Friday, Eldredge & Clark,* for appellants.

*Haskins & Wilson,* by: *Gary Eubanks & Associates* and *Dan F. Bufford,* of *Laser, Sharp, Haley, Young & Huckabay,* P.A. for appellees.

DAVID NEWBERN, Judge. The circuit judge granted a new trial on the ground that a jury verdict for the defendants-appellants was rendered after the case had been removed to a federal court. We hold that it was at the urging of and in response to a motion by the appellees that the action of which they complained in a "mistrial" motion, occurred. The appellees were thus estopped from contending the trial judge erred. The ground for new trial asserted by the judge thus fails, and a new trial should not have been granted.

A second issue arises from appellees' contention on cross appeal that the judge erred in failing to instruct on ultrahazardous activity. We find no merit in that contention, as we find insufficient evidence was produced to go to a jury,

given our supreme court's definition of ultrahazardous activity.

Eli Esau was standing on a ladder while working on a fence outside appellant Chicopee's industrial plant premises. Some $CS_2$ gas was allowed to escape from the plant into a sewer line. An explosion occurred, and Esau was injured in a fall from the ladder.

Esau's guardian sued Chickopee, which is a nonresident defendant, and Chickopee's plant manager, Ralph Thompkins, an Arkansas citizen, alleging negligence in handling and failing properly to store dangerous gases. Thompkins' status as a defendant prevented complete diversity of citizenship between the plaintiffs and the defendants.

At the end of the trial, but before the case went to the jury, the appellees took a voluntary nonsuit as to Thompkins thus making diversity of citizenship complete and making the case removable to the federal court. See, 28 *USCA* § 1332 (1966) and 28 *USCA* § 1441 (1973).

Immediately upon learning of the nonsuit, the appellants notified the court and the appellees of their intent to remove to the federal court. A petition for removal was filed in a U.S. district court. A copy of the removal petition was filed with the circuit court on June 19, 1978, the last day of the trial.

Just after the appellants proposed to remove, and apparently before the removal petition was formally filed, the appellees moved to reinstate Mr. Thompkins as a party. The judge reinstated Thompkins. The jury returned a verdict for the defendants-appellants.

After the jury verdict, the appellees filed in the U.S. district court a response to the removal petition in which the appellees agreed the case had been properly removed. Then the appellees filed, in the U.S. district court, a motion for a mistrial. The U.S. district court remanded the case to the circuit court because, whether properly or not, the state court had reinstated the Arkansas citizen as a defendant before the

petition for removal was filed with the U.S. district court. The circuit court thus had before it a nonremovable case when the removal petition ultimately was filed with the U.S. district court.

The circuit court then realized he had erred in reinstating a defendant as to whom a nonsuit had been taken and ordered a new trial. The appellants, in whose favor the jury verdict was rendered, appeal the new trial order.

## I.  *The New Trial Order*

These complicated facts could have led us into the murky bog created by mixing federal and state jurisdiction. Fortunately, we need not risk that immersion. The problem here was created when the appellees moved to reinstate Mr. Thompkins. According to the trial judge's letter to counsel, the ground upon which he ordered the new trial was specifically and solely the error which occurred when he honored that request. In their mistrial motion the appellees asserted the case was properly removed and everything that transpired in the state court thereafter was void.

As it was the motion of the appellees to reinstate Mr. Thompkins that caused the court to do so and instigated the continuation of the trial resulting in the jury verdict, we hold the appellees are estopped from complaining of the state court's jurisdiction in this matter. *Barber* v. *State,* 248 Ark. 64, 450 S.W. 2d 291 (1970); *Ford Motor Co.* v. *Tritt,* 244 Ark. 890A, 430 S.W. 2d 778 (1968). As the appellees' ground for complaining fails due to this estoppel, we hold it was error for the trial court to grant a new trial.

## II.  *Ultrahazardous Activity*

The cross-appeal of the appellees contends the court erred in refusing to instruct on ultrahazardous activity and the theory of strict liability. The appellants contend no evidence was offered from which a jury could have concluded the use and storage of $CS^2$ was an ultrahazardous activity. The evidence showed an employee of Chickopee inadvertent-

ly allowed the gas to escape into a storm sewer where it exploded.

The definition of ultrahazardous activity which has been used by our supreme court is found in *Zero Wholesale Gas* v. *Stroud,* 264 Ark. 27, 571 S.W. 2d 74 (1978).

> [A]n activity is ultrahazardous if it (a) necessarily involves a risk of serious harm to the person or chattels of others which cannot be eliminated by the exercise of the utmost care *and* (b) is not a matter of common usage. [264 Ark. at 31, emphasis in original.]

In the *Zero* case, the activity of transferring propane gas was held to have been an ultrahazardous activity. The court said it could not say the delivery of propane "does not involve a risk of serious injury . . . which cannot be eliminated by the exercise of ordinary care." (264 Ark. at 31) The court found no evidence the risk could be eliminated by exercise of the "utmost care."

The substance of the testimony of an expert for the appellees in the case before us was that the gas is dangerous and very uncommon, although he listed types of manufacture in which it is used. The supreme court in the *Zero* case found no evidence to show delivery of propane was a matter of "common usage," despite the fact the appellant there had argued (and presumably shown) the use of the gas was common. (See supplemental opinion on denial of rehearing, 264 Ark. 34.)

We do not believe the appellees produced evidence below sufficiently tending to show that $CS_2$ is a gas so inherently dangerous that the utmost care would not prevent risk. Although an expert witness called by the appellees used the term "ultrahazardous" in referring to the gas, he did not say the risk could not be eliminated even though the utmost care was used. He did say a risk would be involved no matter what degree of care was used, but we find no foundation in his testimony for that statement. Certainly he did not in any way support his conclusion that serious bodily harm or injury to chattels was an unavoidable risk by referring to any ex-

amples where either had occurred. Even if it could be said that this seemingly unsupported opinion about the real danger in using $CS^2$ were sufficient to take the question to the jury, however, we find the second part of the definition unsatisfied here.

$CS^2$ may be an uncommon gas, but we believe it more important that it be uncommon for industrial operations to store and use potentially dangerous gases in pipes in factories in industrial areas. There has been no showing that such an activity is uncommon. We believe that, in adopting the second part of the definition of ultrahazardous activity, our supreme court had in mind one of the elements of ultrahazardous activity theory as it developed in England, *i.e.,* that the activity is more likely to result in strict liability if it is both very dangerous and out of place, that is, uncommon in the circumstances in which it causes injury. The familiar example is the blasting which takes place in the center of a city as opposed to a desolate mountainside. See, Prosser, *Torts,* p. 514 (4th ed. 1971).

We see no evidence here that the use or storage of $CS^2$ was inappropriate to the place the plant was located or other surrounding circumstances. Clearly the appellants could have been found negligent in allowing the gas to escape, but they were not. We hold, however, the appellees did not raise a jury question on the ultrahazardous activity theory.

Reversed and remanded for entry of a judgment based on the jury's verdict.