(242 P.3d 1271)
No. 102,356

STATE OF KANSAS, *Appellee*, v. JAMES DUNCAN, JR., *Appellant*.

Opinion filed November 19, 2010.

*Carl F.A. Maughan* and *Catherine A. Zigtema*, of Maughan & Maughan LC, of Wichita, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, for appellee.

Before GREENE, P.J., GREEN and STANDRIDGE, JJ.

STANDRIDGE, J.: James Duncan, Jr., was convicted of driving under the influence (DUI) of alcohol to an extent that rendered him incapable of safely driving a vehicle, in violation of K.S.A. 2006 Supp. 8-1567(a)(3) and (e) (second offense) and failure to illuminate headlights when required, in violation of K.S.A. 2006 Supp. 8-1703(a)(1). This is his direct appeal.

## FACTS

On January 19, 2007, at approximately 11:06 p.m., Deputy Justin Crafton of the Sedgwick County Sheriff's Office was in his vehicle driving on a street in Wichita when he saw another vehicle traveling in the opposite direction with its fog lights turned on, but not its headlights. According to Crafton, it was dark outside and the roads were "somewhat icy" and covered in slush. Crafton turned his vehicle around and eventually pulled over the vehicle. When Crafton made contact with the driver, later identified as Duncan, Crafton smelled "a very strong odor of alcoholic beverage" emanating from Duncan. Crafton also observed that Duncan's eyes were bloodshot and watery and that his speech was slurred.

As part of a "divided attention test" (a test where an officer asks a suspected impaired driver to complete two tasks at once—the theory being that an impaired person will not remember to complete both tasks), Crafton asked Duncan for his driver's license and proof of insurance, and Duncan only remembered to give Crafton his driver's license. Crafton asked Duncan where he was coming from, and Duncan told him that he was coming from a liquor store. Crafton then asked Duncan to exit the vehicle in order to conduct field sobriety testing. Crafton noticed that when Duncan exited the vehicle, he was "unsteady."

Crafton asked Duncan to perform the walk-and-turn and the one-leg-stand tests. Crafton stated that during the "demonstration and explanation phase" of the walk-and-turn test—where subjects are required to stand with their right foot directly in front of their left in a heel-to-toe position as they listen to instructions—Duncan lost his balance several times while Crafton was explaining the test to him. Crafton stated that Duncan eventually gave up standing heel-to-toe and simply stood with his feet side by side. During the testing phase, Duncan failed to walk in a straight line, used his arms for balance, and took an incorrect number of steps. During the one-leg-stand test, Duncan used his arms for balance and failed to stand on one foot throughout the duration of the test. Crafton believed Duncan's performances on both tests indicated that Duncan was impaired.

Crafton ultimately arrested Duncan for DUI and searched his car, finding an opened bottle of "MD 20/20" containing half an inch of liquid in the bottle and an unopened bottle of Bud Light. Crafton then transported Duncan to the Sedgwick County Detention Facility where, after providing Duncan with the applicable written and oral statutory notices, Crafton asked Duncan if he would take an evidentiary breath test. Duncan refused to submit to testing. Subsequently, Crafton issued a citation to Duncan for DUI (second offense) and failure to have his headlights illuminated when required.

Duncan's case proceeded to a bench trial where Crafton testified to the above-mentioned facts. Furthermore, the State introduced into evidence a DVD recording of Duncan's performance on the field sobriety tests. This recording is not included in the record on appeal, but according to the district court, the DVD showed that Duncan clearly had problems with performing the walk-and-turn and one-leg-stand tests.

At the bench trial, Duncan took the witness stand and admitted to drinking "about two cans of beer" 45 minutes prior to being pulled over. Duncan claimed, however, that the beer did not affect his ability to drive a vehicle. Duncan admitted to driving without his headlights turned on, but stated that the street on which Crafton saw him driving was well lit and that the dash lights of his vehicle were turned on, making Duncan believe that his headlights were illuminated. When he turned his vehicle onto another street, Duncan stated that he realized his headlights were off and quickly turned them on.

With regard to the field sobriety tests that Crafton had him perform, Duncan claimed that the coldness and the snow and ice on the streets caused him to be nervous, thereby affecting his performance on the walk-and-turn and one-leg-stand tests. During cross-examination, Duncan stated that he knew if he submitted to breath testing and the results showed that he was not intoxicated, there would be no adverse consequences to his license, and he would be allowed to go home. With regard to the bottle of MD 20/20 found in his car, Duncan admitted that it was a type of wine but claimed he did not drink any of it that night.

After hearing all the evidence and arguments of counsel, as well as viewing the DVD showing Duncan perform the field sobriety tests, the district court found Duncan guilty of DUI and failing to have his headlights illuminated when required. The district court sentenced Duncan to an underlying jail sentence of 12 months and placed him on probation for 1 year. Prior to being placed on probation, the district court ordered Duncan to first serve 2 days in jail and then 8 days under house arrest. Finally, the district court ordered Duncan to pay fines totaling $1,560 ($1,500 for the DUI and $60 for failure to have his headlights illuminated).

## ANALYSIS

On appeal, Duncan claims his convictions must be vacated and the charges against him dismissed because the State failed to present sufficient evidence to convict him of either DUI or failing to have his headlights illuminated when required. Alternatively, Duncan claims his DUI conviction must be vacated and the charge remanded for a new trial on grounds that (1) the district court erred in allowing Deputy Crafton to testify that Duncan's performance on the walk-and-turn and one-leg-stand tests indicated his blood alcohol concentration (BAC) was over .08; (2) his constitutional right to a jury trial was violated because he was never informed of or waived his right to a jury trial; (3) K.S.A. 22-3404 should be stricken as unconstitutional because it unlawfully restricts the time period within which persons charged with misdemeanors must request a jury trial; (4) the district court erred in sentencing Duncan; and (5) the district court erred when it allowed the State to reopen its case after it rested.

For the reasons stated below, we find there was sufficient evidence presented at trial to convict Duncan for DUI and for failing to have his headlights illuminated when required. We further find, however, that Duncan unlawfully was denied the constitutional right to have his case tried to a jury instead of a judge. As such, we reverse the DUI conviction and remand for a new trial with directions. Given our decision to reverse and remand for a new trial on this ground, we find it unnecessary to determine whether the al-

ternative grounds submitted by Duncan in support of reversal and remand have any merit.

*Sufficiency of the Evidence*

Duncan argues that the State failed to present sufficient evidence to convict him of either DUI or failure to have his headlights illuminated when required. When the sufficiency of the evidence is challenged in a criminal case, an appellate court reviews all the evidence in the light most favorable to the prosecution to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Trautloff*, 289 Kan. 793, 800, 217 P.3d 15 (2009). In its review of the evidence, an appellate court will not reweigh the evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence. *State v. Hayden*, 281 Kan. 112, 132, 130 P.3d 24 (2006).

*The State presented sufficient evidence to convict Duncan of DUI.*

As noted above, Duncan was charged pursuant to K.S.A. 2006 Supp. 8-1567(a)(3) for operating a vehicle while "under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle." In *State v. Blair*, 26 Kan. App. 2d 7, Syl. ¶ 2, 974 P.2d 121 (1999), a panel of this court stated: "Evidence of incapacity to drive safely can be established through sobriety tests and other means. Observed erratic driving is not a requirement for conviction of driving while under the influence of alcohol." The panel ultimately found the State presented sufficient evidence to convict Blair of DUI under K.S.A. 1997 Supp. 8-1567(a)(3) even though there was no evidence showing that she drove her vehicle in an erratic manner. 26 Kan. App. 2d at 7-8.

The evidence presented here showed that after pulling Duncan over for failing to have his headlights illuminated, Crafton made contact with Duncan and smelled "a very strong odor of alcoholic beverage" emanating from him, observed that his eyes were bloodshot and watery, and noticed that his speech was slurred. In order to assess impairment, Crafton requested Duncan complete a two-part task: produce his driver's license and proof of insurance. Duncan only remembered to give Crafton his driver's license. Crafton

asked Duncan where he was coming from, and Duncan told him that he was coming from a liquor store. When Duncan exited his vehicle, Crafton noticed that Duncan was "unsteady."

Crafton had Duncan perform the walk-and-turn and the one-leg-stand tests. Duncan's performance on these tests indicated to Crafton that Duncan was impaired and unable to safely operate a vehicle. A DVD recording was introduced into evidence at the bench trial showing Duncan performing the field sobriety tests. Though this DVD is not part of the record on appeal, the district court reviewed a copy of the DVD showing Duncan performing the field sobriety tests and noted at the bench trial that Duncan had numerous problems with performing both tests. The court also stated that Duncan's problems appeared not to be related to the weather or the road conditions.

After arresting Duncan, Crafton searched Duncan's car and found an opened bottle of MD 20/20 containing half an inch of liquid in the bottle and an unopened bottle of Bud Light. At trial, Duncan conceded that MD 20/20 was a type of wine but claimed that he did not consume any of it that night. Nevertheless, Duncan admitted to drinking "about two cans of beer" 45 minutes prior to being pulled over. When confronted at trial with his refusal to submit to an evidentiary breath test, Duncan stated he knew that if he had submitted to testing and the results showed that he was not intoxicated, there would have been no adverse effect upon his license and he would have been allowed to go home. See K.S.A. 2006 Supp. 8-1001(i) ("The person's refusal [to submit to testing] shall be admissible in evidence against the person at any trial on a charge arising out of the alleged operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both.").

Viewing all of this evidence in the light most favorable to the prosecution, we believe a rational factfinder could find that Duncan consumed alcohol prior to operating a vehicle and that, based on his demeanor during the traffic stop and his performance on the field sobriety tests, such consumption impaired psychomotor skills that are essential to safely driving a vehicle. In other words, a rational factfinder could find beyond a reasonable doubt that

Duncan was operating his vehicle while under the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle. For these reasons, we conclude that the State presented sufficient evidence to convict Duncan of DUI under K.S.A. 2006 Supp. 8-1567(a)(3).

*The State presented sufficient evidence to show that Duncan failed to have the headlights of his vehicle illuminated while driving after sunset.*

K.S.A. 2006 Supp. 8-1703 states:

"(a) Every vehicle . . . upon a highway within this state, at all times shall display lighted head and other lamps and illuminating devices as required for different classes of vehicles, subject to exceptions with respect to parked vehicles:

(1) *From sunset to sunrise*;

(2) when due to insufficient light or unfavorable atmospheric conditions, including smoke or fog, persons and vehicles on the highway are not clearly discernible at a distance of 1,000 feet ahead; or

(3) when windshield wipers are in continuous use as a result of rain, sleet or snow." (Emphasis added.)

K.S.A. 8-1424 defines "highway" as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel."

The State presented evidence at trial that established that Duncan was driving his vehicle at 11:06 p.m. on a public street in Wichita without his vehicle's headlights turned on. In fact, Duncan conceded this fact at trial during his testimony and closing argument. We may take judicial notice that on the date of Duncan's arrest, January 19, 2007, sunset occurred prior to 11:06 p.m. in Wichita, Kansas. See K.S.A. 60-409(a) (judicial notice may be taken of such facts generally known or of such common notoriety that they cannot reasonably be the subject of dispute); *Martin v. Kansas Dept. of Revenue*, 38 Kan. App. 2d 1, 6-7, 163 P.3d 313 (2006) (taking judicial notice that sunset occurred prior to 9:20 p.m. on April 28, 2004, in Glasco, Kansas). For these reasons, we find sufficient evidence was presented at trial showing, beyond a reasonable doubt, that Duncan violated K.S.A. 2006 Supp. 8-1703(a)(1).

Simply put, we find no merit to Duncan's claims of insufficient evidence.

*Right to Trial by Jury*

Duncan argues his conviction for DUI must be reversed because he was unlawfully denied the constitutional right to have his case tried to a jury instead of a judge.

Duncan did not raise this issue before the district court. Generally, issues not raised before the district court cannot be raised on appeal. *State v. Shopteese*, 283 Kan. 331, 339, 153 P.3d 1208 (2007). There are exceptions to this rule, however, including where (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case, (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights, or (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or reasons. 283 Kan. at 339. With regard to the second exception, a panel of this court previously has recognized "[t]here is no more fundamental right in the United States than the right to a jury trial." *State v. Larraco*, 32 Kan. App. 2d 996, 999, 93 P.3d 725 (2004). Accordingly, we will address the merits of whether Duncan's constitutional right to a jury trial was violated in this case. See *State v. Bowers*, 42 Kan. App. 2d 739, 740, 216 P.3d 715 (2009) (deciding to address a jury trial waiver issue for the first time on appeal because "the consideration of the denial of a right to a jury trial is necessary to prevent the denial of a fundamental right").

Determining whether Duncan effectively waived his right to a jury trial requires constitutional interpretation; thus, our review is unlimited. See *State v. Morfitt*, 25 Kan. App. 2d 8, 11, 956 P.2d 719, *rev. denied* 265 Kan. 888 (1998). We begin our analysis by reviewing the right to trial by jury that is guaranteed by both the United States and the Kansas Constitutions.

The Sixth Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment, guarantees a jury trial to any defendant charged with a crime punishable by more than 6 months of imprisonment. *Lewis v. United States*,

518 U.S. 322, 325-26, 116 S. Ct. 2163, 135 L. Ed. 2d 590 (1996); *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 (1975). Likewise, Section 5 of the Kansas Constitution Bill of Rights states that "[t]he right of trial by jury shall be inviolate." A defendant's constitutional right to be tried by a jury rather than solely by the court is "'fundamental to the American scheme of justice.'" *Irving*, 216 Kan. at 589 (quoting *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S. Ct. 1444, 20 L. Ed. 2d 491 [1968]).

Nevertheless, a defendant can waive his or her constitutional right to a jury trial. *Irving*, 216 Kan. at 589. In order for a defendant to effectively waive his or her constitutional right to a jury trial, however, two conditions must be met: (1) the trial court must advise the defendant of his or her right to a jury trial, and (2) the defendant must waive the right personally, either in writing or in open court for the record. Waiver will not be presumed upon a silent record. 216 Kan. at 589-90.

As Duncan asserts, he had a constitutional right to a jury trial with regard to the DUI charges against him because that crime was punishable by more than 6 months of imprisonment. See K.S.A. 2006 Supp. 8-1567(e) (providing that upon a second conviction for driving under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle, such person shall be sentenced to not less than 90 days nor more than 1 year's imprisonment). In support of the assertion that his constitutional right to a jury trial was violated, Duncan argues there is no evidence in the record that the district court advised him of his right to a jury trial or that he personally waived his right to a jury trial in writing or in open court. See *Irving*, 216 Kan. at 589 (waiver of the right to a jury trial will not be presumed from a silent record).

In response to this argument, the State counters that Duncan's reference to a silent record is insufficient to satisfy his burden to designate a record which affirmatively shows prejudicial error. See *State v. Goodson*, 281 Kan. 913, Syl. ¶ 3, 135 P.3d 1116 (2006) ("A party asserting error has the burden to designate a record which affirmatively shows prejudicial error in the trial court, and, without such a record, this court presumes the trial court's action was proper."). In *Goodson*, the defendant appealed the district

court's decision to deny a motion to suppress statements the defendant made to a detective on grounds that the statements were not voluntary. Although there was a videotape of the interview during which the statements were made, the defendant failed to include the videotape or a transcript of the videotape in the record on appeal. The holding in *Goodson* was grounded in the particular facts of the case: that defendant failed to include in the record on appeal evidence that both existed in the record and was presented to the district court.

Unlike *Goodson*, there has been no assertion by either party in this case that Duncan failed to include in the record on appeal any evidence that existed in the record and was presented to the district court. This factual distinction is significant because it requires Duncan to prove an absence of evidence; in other words, to prove a negative fact. To that end, and unlike the definitive burden necessary to prove an *existing* fact, the burden to prove a *negative* fact does not require a defendant to irrefutably demonstrate the fact does not exist; it requires only that the defendant do what is ordinary for one who bears a clear and convincing burden of proof, *i.e.*, show that his or her version of the facts is highly probable. See *In re B.D.-Y.*, 286 Kan. 686, 690-98, 187 P.3d 594 (2008); accord *In re Chicago Rys. Co.*, 175 F.2d 282, 290 (7th Cir. 1949) (establishing through evidence that it is probable a fact does not exist may be sufficient to satisfy burden of proof); *Zero Wholesale Gas v. Stroud*, 264 Ark. 27, 34c, 571 S.W.2d 74 (1978); *Dorsey v. Brigham*, 177 Ill. 250, 262, 52 N.E. 303 (1898) (same); *Shumak v. Shumak*, 30 Ill. App. 3d 188, 191, 332 N.E.2d 177 (1975) (same); *Young v. Woodman*, 18 N.M. 207, 210-11, 135 P. 86 (1913) (same); *Higgins v. Salewsky*, 17 Wash. App. 207, 210, 562 P.2d 655 (1977) (same); 31A C.J.S. Evidence § 200 (same). Stated another way, the party asserting an absence of evidence to support a claim still bears the burden to prove that claim, but the standard of proof required to satisfy this burden necessarily is less onerous.

We find instructive the Arkansas Supreme Court's explanation of this alternative standard of proof:

"The 'burden of evidence' or 'of going forward' is more easily discharged when the proposition is a negative one than when it is a positive one, and the burden

of evidence will shift when the evidence, even though circumstantial, renders provable the existence of a negative fact. . . . 'Full and conclusive proof is not required where a party has the burden of proving a negative, but it is necessary that the proof be at least sufficient to render the existence of the negative probable, or to create a fair and reasonable presumption of the negative until the contrary is shown.' " *Stroud*, 264 Ark. at 34c (supplemental opinion on petition for rehearing).

Applying the standard of proof applicable in negative evidence cases to the facts presented here, Duncan bears the burden to designate a record that establishes a high probability (as opposed to conclusively) that he did not effectively waive his right to a jury trial. Upon review of the record designated by Duncan, we are satisfied Duncan met his burden in this regard.

The appearance docket contained in the record on appeal shows that several disposition hearings took place in this case prior to the bench trial. Although none of these hearings were recorded, there is nothing contained in the appearance docket or the disposition sheets from these hearings to indicate that the district court ever advised Duncan of his right to a jury trial or that Duncan waived this right. The appearance docket reflects that the only hearing recorded was the bench trial, and Duncan properly added the transcript of this hearing to the record on appeal. Nevertheless, there is nothing in this transcript to suggest, let alone establish, that Duncan was advised of, or waived his right to, a jury trial.

Duncan included in the record on appeal documents and other evidence that typically reflect whether the district court advised a defendant of his or her constitutional right to a jury trial and whether the defendant waived that right, either in writing or in open court. Review of the record designated by Duncan reveals nothing to indicate that the district court advised Duncan of his constitutional right to a jury trial or that Duncan personally waived his right to a jury trial. And, although it bore no burden to do so, the State did not submit any evidence to refute the silent record affirmatively designated by Duncan in support of his claim that he did not voluntarily and knowingly waive his right to a jury trial.

We are satisfied Duncan met his burden to designate a record establishing a high probability that Duncan did not effectively

waive his right to a jury trial on the DUI charge. Because we have found Duncan to have adequately sustained his burden, we necessarily conclude that Duncan was unlawfully deprived of his constitutional right to a jury trial on the DUI charge; thus, Duncan's conviction for DUI must be reversed and the case remanded for new trial on this claim. See *Irving*, 216 Kan. at 590 (after determining that the record on appeal did not contain any evidence showing that Irving validly waived his constitutional right to a jury trial, the panel reversed Irving's convictions for felony DUI and several traffic offenses and remanded for a new trial). Prior to scheduling the new trial, (1) the district court shall advise Duncan in open court on the record of his right to a jury trial; and (2) Duncan shall state either in writing or in open court whether he wants to proceed with a jury trial or waive the right.

Based on our decision to reverse the DUI conviction and remand with directions, we find to be moot the four alternative claims presented by Duncan in support of reversal and remand for a new trial on the DUI charge: (1) the district court erred in allowing Deputy Crafton to testify that Duncan's performance on the walk-and-turn and one-leg-stand tests indicated his BAC was over .08; (2) K.S.A. 22-3404 should be stricken as unconstitutional because it unlawfully restricts the time period within which persons charged with misdemeanors must request the right to jury trial; (3) the district court erred in sentencing Duncan; and (4) the district court erred when it allowed the State to reopen its case after it rested.

Based on the discussion above, we affirm Duncan's conviction for failure to illuminate headlights but reverse Duncan's DUI conviction, and remand for further proceedings consistent with this opinion.