NOT DESIGNATED FOR PUBLICATION

No. 123,672

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KEVIN L. WILLIAMS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Franklin District Court; ERIC W. GODDERZ, judge. Opinion filed February 18, 2022.
Affirmed.

*John A. Boyd*, of Harris Kelsey, Chtd., of Ottawa, for appellant.

*Tara N. Athmer*, assistant county attorney, *Brandon L. Jones*, county attorney, and *Derek
Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MALONE, J., and RICHARD B. WALKER, S.J.

PER CURIAM:  Following a bench trial, Kevin L. Williams was convicted of
driving under the influence. He appeals, contesting the sufficiency of the evidence
supporting his conviction. Because a rational fact-finder could find from the evidence
that Williams was operating a vehicle while inebriated to the point of being unable to
safely operate a vehicle, we affirm his conviction.

1

FACTS

In July 2019, Williams was charged in Franklin County District Court with one count of felony driving under the influence (DUI)—third offense, one count of driving while suspended with priors, and one count of transporting an open container. In February 2020, the State filed an amended complaint, reducing the charges against Williams to one count of misdemeanor DUI—second offense.

Williams waived his right to a jury trial. At Williams' bench trial, the district court first heard testimony from Joseph Garcia, a Franklin County resident. Garcia testified that he was outside his home on June 1, 2019, when he noticed two individuals, a male and a female, arguing outside the neighboring residence. Garcia stated that both individuals appeared to be drunk, as they were slurring their words and falling over. Once Garcia concluded that they were planning on driving, he called 911. Garcia said that he saw both individuals get in the vehicle and leave, with the male driving. He described the driver as a white male wearing a leather ball cap with his hair tucked back.

Garcia stated that he stayed on the line with the 911 operator to help police locate the vehicle as he followed it on foot. Garcia testified that once the vehicle turned the corner, which was about a half-block away, he ran down to the corner so he could maintain sight of the it and describe its route to police as it continued down the street. A recording of Garcia's 911 call was also admitted as an exhibit and reviewed by the district court.

In his 911 call, Garcia described the vehicle as a white Ford van with handicap plates and a storage container on the top. Garcia also relayed that there were two individuals and a dog in the vehicle and that the driver was a male wearing a black leather hat with long hair who was smoking a cigarette. Garcia told the dispatcher that he

2

was following the van on foot and continued to relay its location until the dispatcher said that an officer had located the vehicle.

The district court also heard testimony from Officer Dylan Eckard of the Ottawa Police Department. Officer Eckard testified that he responded to Garcia's 911 call and was receiving updates from Garcia via the dispatcher as he looked for the vehicle. After pulling on to the street identified by Garcia, Eckard observed a vehicle matching the description given by Garcia. Eckard stated that after noticing the vehicle in his rearview mirror, he watched it turn down an alleyway. According to Eckard, he then turned his patrol car around and followed the vehicle down the alley, locating it in a driveway. Eckard admitted on cross-examination that after the van turned into the alley, he lost sight of it for about 10 seconds.

Officer Eckard testified that after parking behind the van, he noticed two people inside and saw the person in the driver's seat move to the rear of the interior. Eckard stated that after approaching the van, he identified Williams as the person who had been in the driver's seat. Eckard stated that he asked Williams why he had moved to the back of the van, and Williams responded by mentioning a minnow bucket. Eckard testified that while talking to Williams, he could see an open container of beer sitting in the van near Williams.

Officer Eckard said that Williams, without being prompted to do so, then exited the van with his hands behind his back and informed Eckard that he had a knife. Eckard stated that after ordering Williams to drop the knife on the ground and move away from the van, he asked Williams for identification and had him perform field sobriety tests.

Officer Eckard testified that before beginning the sobriety tests, Williams had trouble maintaining his balance and had to steady himself using the hood of Eckard's patrol car. Eckard also relayed that in his initial interactions with Williams, Williams had

3

watery, bloodshot eyes, was unsteady on his feet, slurred his speech, and had an odor of alcohol coming from his breath. At Eckard's direction, Williams performed two standardized sobriety tests: the walk-and-turn test and the one-leg-stand test. Eckard stated that he had Williams perform both tests in the gravel driveway and that, for the walk-and-turn test, there was no actual line on the ground, but that he simply asked Williams to walk in a straight line.

Officer Eckard indicated that Williams did poorly on both tests. He stated that Williams exhibited five clues of impairment on the walk-and-turn test: stepping out of stance, not walking heel to toe as instructed, failing to walk in a straight line, making an improper turn, and stopping while walking. Eckard also stated that Williams swayed and placed his foot down during the one-leg-stand test. In response to Williams' poor performance on these tests, Officer Eckard arrested him for DUI. Eckard testified that after placing Williams in the back of his patrol car, he searched Williams' van and found four containers of beer. According to Eckard, one of the beers was empty and three were open and partially full, having fallen over and spilled on the floor of the van.

Video footage of the above events, which was captured by Officer Eckard's body camera, as well as a photo of the beer containers were admitted as evidence and reviewed by the district court. Both pieces of evidence appear to support Eckard's description of the interaction. In the footage, the female in the van appears at one point to say that she was driving the van, but under cross-examination Eckard testified that he interpreted her comment as a statement about how she would get home after the stop.

Officer Eckard also testified that while on their way to the county jail, Williams stated that he had been driving the van. Cameras inside Eckard's patrol car recorded this statement, footage of which was admitted as an exhibit and viewed by the district court. In the video, Williams stated that he was driving the van so the passenger would not have to and that he only drove it two blocks.

4

Officer Eckard testified that once at the jail, Williams refused to take breath, blood, or urine tests to establish his blood alcohol content. Eckard indicated that he did not try to get a search warrant to conduct a blood test, as the department policy was not to do so in municipal cases, which he believed Williams' case would be at that time.

On cross-examination, Officer Eckard confirmed that he was not able to identify the driver of the van until he pulled up behind it in the alley, at which point it was already parked in the driveway. Thus, he could not rule out the possibility that Williams and the person in the passenger seat had switched places in the 10 seconds he had lost sight of the van. Eckard also admitted on cross-examination that during the one-leg-stand test, Williams asked if he could move to the grass, as the gravel was uneven and made it difficult to balance. Eckard confirmed that he denied this request and instead made Williams complete the test on a different patch of gravel.

At the conclusion of the bench trial the district court found Williams guilty of DUI—second offense. In finding that Williams was operating or attempting to operate the van, the district court noted that Garcia testified that he saw Williams get in the driver's seat and that Officer Eckard testified that Williams was sitting in the driver's seat when he pulled up behind the van. The district court also noted that Williams admitted to Eckard that he was driving the van. In support of its finding that Williams was inebriated, the district court explained that while there was no evidence of erratic driving and no blood or breath tests establishing that Williams was inebriated, the remaining evidence was sufficient to make such a finding. The district court observed that Williams appeared intoxicated on the video recording of his arrest, that open containers of beer were found in the van, that Officer Eckard noticed the smell of alcohol on Williams' breath, that Williams had difficulty understanding Eckard's commands and ultimately failed both sobriety tests, and that Williams refused to take a breath or blood test. The district court also pointed out that although the tests were not administered under perfect conditions, they took place on a level gravel driveway in broad daylight.

The district court ultimately sentenced Williams to nine months in the county jail with credit for time served.

Williams has timely appealed from the district court's decision finding him guilty.

ANALYSIS

On appeal, Williams' single contention is that the State's evidence was insufficient to convict him of DUI.

When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in the light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. In making this review, we do not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. *State v. Colson*, 312 Kan. 739, 749-50, 480 P.3d 167 (2021).

A DUI conviction, like any conviction, can be supported by direct or circumstantial evidence. *State v. Perkins*, 296 Kan. 162, 167, 290 P.3d 636 (2012). Thus, a DUI conviction can be based entirely on circumstantial evidence and inference. So long as any inference made is reasonable, the fact-finder has the right to make the inference. *Colson*, 312 Kan. at 750.

To convict Williams of DUI, the State was required to show that he "operat[ed] or attempt[ed] to operate any vehicle within this state while: . . . under the influence of alcohol to a degree that render[ed] [him] incapable of safely driving a vehicle." K.S.A. 2020 Supp. 8-1567(a)(3). Thus, no breath, blood, or urine test was needed to convict Williams of DUI, so long as competent evidence existed to support the inference that he was impaired beyond the point of being able to safely drive a vehicle. See *State v.*

6

*Duncan*, 44 Kan. App. 2d 1029, 1034, 242 P.3d 1271 (2010) (explaining that evidence of incapacity to drive safely can be established through sobriety tests and other means).

Williams argues on appeal that the evidence presented by the State was insufficient to support his conviction for driving under the influence. He argues that (1) the district court should not have relied on Garcia's testimony; (2) there is insufficient proof that Williams was driving the van; and (3) there is insufficient proof that Williams was impaired. We will address each of these arguments in turn.

Williams first complains that the district court should not have relied on Garcia's testimony in convicting him, as the State never had Garcia identify Williams as the man he saw outside his house or identify the van Williams was found in as the vehicle he saw. As such, Williams argues that we should disregard Garcia's testimony in reviewing the sufficiency of the evidence supporting his conviction.

After reviewing the entire record, we conclude that the district court properly relied on Garcia's testimony in determining Williams' guilt. Although the State never had Garcia identify Williams, the inference that Williams was the same person that Garcia observed driving the van is a reasonable one. Williams' appearance, as established by Officer Eckard's testimony and the body camera footage, matched the detailed description given by Garcia in the 911 call. Garcia testified that he followed the van and relayed its location until the dispatcher said that Officer Eckard had begun following it. Additionally, Garcia's description of the van, as well as his description of the other occupants of the van, matched the footage captured by Eckard's body camera. Given this evidence, a rational fact-finder could have determined that Garcia saw Williams driving the van.

Second, Williams argues that the State failed to prove that he was driving the van that Officer Eckard found him sitting in. Williams points out that Eckard testified he

never actually saw Williams driving the van—when Eckard saw him sitting in the driver's seat, the van was already parked. Williams further emphasizes that the van's interior allowed for the occupants to easily switch positions.

It is true, as Williams contends, that Eckard could not say definitively whether Williams or the passenger were operating the vehicle, as he lost sight of the van for about 10 seconds before he parked behind it and saw Williams in the driver's seat. Williams also argues that his statement acknowledging that he drove the van is insufficient to establish that he was the driver, given his other statements denying doing so and the other individual's claims that she was the driver.

But even if the district court did not rely on Garcia's testimony, Officer Eckard's testimony would still be sufficient to sustain the district court's finding that Williams was operating the van. Eckard testified that he followed a white van down the alleyway, only losing sight of it for roughly 10 seconds. When he pulled up behind what he believed to be the same white van, parked in a driveway within the alley, he saw Williams sitting in the driver's seat. Based on this circumstantial evidence, a rational person could reasonably infer that Williams was driving the van that Officer Eckard followed into the alley. Even more conclusively, Williams admitted to Eckard that he had been driving the van. We cannot reweigh the evidence and disregard this admission. Viewing this evidence in the light most favorable to the prosecution, it is clearly sufficient to support a finding that Williams was operating the van.

Third, Williams argues that there was insufficient evidence that he was impaired to the extent of being incapable of safely operating a vehicle. Williams notes that the district court relied solely on the testimony of Garcia and Officer Eckard to infer that he was impaired, without any scientific evidence of the alcohol content of his blood. Williams repeats his claim that Garcia's testimony is not reliable and argues that it thus cannot be used to establish he was impaired. Williams also points out that Eckard

8

testified that he did not observe any indications of impairment while following the van he was allegedly driving. Additionally, Williams argues that Officer Eckard's testimony regarding his performance on the field sobriety tests is insufficient to establish that he was impaired because Eckard never actually testified that Williams failed the tests. Williams also argues that the tests were flawed in that there was no line used in the walk-and-turn test and the condition of the surface was rocky and uneven. Given these conditions, Williams claims that no inference of impairment can be made from his performance on the tests. Finally, Williams points out that Officer Eckard acknowledged that he could have sought a warrant for a blood test but chose not to for departmental policy reasons.

After reviewing the full record, we find there is sufficient circumstantial evidence here to support the finding that Williams was under the influence of alcohol to such a degree that he was incapable of safely operating a vehicle. Officer Eckard testified that Williams slurred his speech, had trouble balancing, and performed poorly on both sobriety tests. Eckard also found four open containers of beer in the van and testified that Williams' eyes were watery and bloodshot and that his breath smelled of alcohol. Thus, the inference that Williams had consumed alcohol, that his basic motor functions were impaired, and that he was thus incapable of safely operating a vehicle is reasonable.

Williams' argument that the field sobriety tests should be discounted because of the surface on which he was asked to complete them is unpersuasive. As the district court noted, Officer Eckard's body camera footage showed that Williams performed the tests on a level gravel driveway in clear conditions at midday. Although a paved surface would have been preferable, one does not appear to have been available, given the location where the stop was made. Furthermore, even if an uneven surface was the true cause of Williams' difficulty balancing, it still would not explain the multiple other clues of impairment he exhibited.

In conclusion, the evidence here is sufficient to support Williams' conviction for DUI. Given the circumstantial evidence, a rational fact-finder could have found beyond a reasonable doubt that Williams was operating a vehicle while under the influence of alcohol to such a degree that he was incapable of safely driving. Accordingly, we affirm the district court's ruling.

Affirmed.