NOT DESIGNATED FOR PUBLICATION

No. 127,227

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL DUANE WESTGATE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; JOHN BOSCH, judge. Submitted without oral argument. Opinion filed March 13, 2026. Affirmed in part, reversed in part, and remanded with directions.

*Grace E. Tran*, Kansas Appellate Defender Office, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, *Kris W. Kobach*, attorney general, for appellee.

Before HURST, P.J., GARDNER and BOLTON FLEMING, JJ.

HURST, J.: The State charged Michael Duane Westgate with six offenses based, in part, on evidence obtained from an inventory search of his car. Westgate unsuccessfully sought to suppress the evidence from his car to prevent its use against him and subsequently agreed to proceed by bench trial on stipulated facts. As part of that proceeding, Westgate filed stipulated facts and a signed jury trial waiver, but the district court never advised Westgate of his right to a jury trial or otherwise engaged him about the waiver. After denying the motion to suppress and accepting the stipulated facts and waiver, the district court found Westgate guilty on all counts.

1

Westgate now appeals by arguing the district court violated his right to a jury trial and erred in denying his suppression motion. Finding the district court did not properly advise Westgate of his jury trial right or ensure a sufficient waiver, Westgate's conviction for possession of methamphetamine is reversed. His other convictions are affirmed. Additionally, Westgate fails to show the district court erred in denying his motion to suppress. Affirmed in part, reversed in part, and remanded with instructions.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2022, the State charged Westgate with: (1) felony unlawful possession of a controlled substance; (2) misdemeanor possession of drug paraphernalia; (3) misdemeanor driving with a suspended license; (4) misdemeanor intentionally driving an uninsured vehicle; (5) misdemeanor transportation of liquor in an open container; and, (6) a misdemeanor registration violation.

At the preliminary hearing, the State produced one law enforcement officer from the Kansas Highway Patrol as its sole witness. The officer testified that on the day in question he noticed a car parked on the side of highway K-18 that he thought was abandoned. The officer approached the car to put an orange sticker on it to give the owner notice that they had 48 hours to move the car or it would be towed. At that time, the officer noticed a man in the driver's seat, slumped over with no signs of life and a "long gun" in the passenger seat.

The officer attempted to wake the driver, later identified as Westgate, by reaching through the open rear window to touch him. Westgate awoke and seemed startled. Because of the officer's concern about the gun in the passenger seat, he opened the driver's door and asked Westgate to get out of the car. Upon further investigation, the officer later realized the gun was an air rifle, not a lethal weapon.

2

The officer testified that once out of the car, Westgate handed the officer his Kansas ID card because Westgate's driving privileges had been suspended. The officer had run the car's tags before he approached and learned the tags were not registered to Westgate. Westgate told the officer that he was purchasing the car, had not yet insured it, and was still using the last owner's tags. Westgate originally claimed he was not driving the car—that he had just been dropped off—but he later admitted he had driven the car until it broke down on the roadside.

While the officer verified Westgate's ID, he learned from dispatch that Westgate had a misdemeanor warrant for his arrest in Riley County. At that point, the officer arrested Westgate on his outstanding warrant. He completed a general pat down of Westgate, which revealed only a wallet. When asked, Westgate told the officer he did not want to take the wallet to jail with him and to just leave it in the car.

The officer testified that when arresting a driver, it is Kansas Highway Patrol's policy to tow the car if there is nobody there to move it and that, before towing the car, the officer completes an inventory. After arresting Westgate, the officer began an inventory of the car and came across a backpack that had "a couple of broken meth pipes" inside. At that point, the officer searched the car based on what he believed was probable cause of illegal activity and found alcohol in the car.

The officer kept Westgate's wallet to inventory any valuables because it would be left in the car at Westgate's request. While looking through the wallet the officer found a baggie of what he "assum[ed] was methamphetamine." Westgate then admitted that the substance was methamphetamine and that he had wanted the wallet to stay in the car so it would not go to jail with him. After hearing the officer's testimony, the district court found probable cause to bind Westgate over for arraignment on his felony charge.

3

*Motion to Suppress*

Following the preliminary hearing, Westgate moved to suppress evidence by arguing the officer illegally turned a welfare check "into a criminal/traffic investigation" and seized Westgate without reasonable suspicion. In July 2023, the district court held a hearing on Westgate's suppression motion where the officer who testified at the preliminary hearing testified again. The State also played the video from the officer's patrol car camera from minutes 1:32 to 10:56 depicting when the officer pulled behind Westgate's car until the inventory.

The video shows the officer pulling up behind Westgate's car, which is parked on the side of an on-ramp to the highway, and calling in the license plate number. The officer is then seen walking to the car with an orange sticker in his hand, looking in the passenger side windows, returning to his patrol car, and telling dispatch "It's not abandoned, there's somebody in there. . . . There's a long gun in the passenger seat." The video then shows the officer returning to the car, waking Westgate, and opening the door to question Westgate about the car being parked on the side of the road.

In the video, Westgate tells the officer that he had recently purchased the car and the tag was not yet in his name. Westgate explains that he works for a tow company, and when the car broke down he waited there with the car for a tow. Westgate continues by saying the tag should come back to the prior owner named Alex, although he could not recall Alex's last name. The officer is then heard asking for Westgate's driver's license with Westgate replying that "it's just an ID right now." The video shows Westgate first say, "No, I did not drive here, but I'm supposed to get the vehicle," but later admit that he drove it to the location where it broke down.

After exiting the vehicle at the officer's direction, Westgate is heard telling the officer he was waiting for someone named Scott to tow the car but Westgate did not have

4

his phone on him. When asked how he contacted "Scott" without a phone, Westgate says, "I flagged somebody down . . . and left him a message." Westgate then says that Scott had the title to the car because he was the prior owner. In response to the officer's question, Westgate responds that he did not have insurance on the car.

The video then cuts forward to Westgate already in handcuffs, with the officer saying he is going to ticket Westgate for driving with no license, no insurance, and no tags. The officer asks Westgate if he wants his wallet to go with him to jail, and Westgate says he wants it left in the console of the car. The officer then places Westgate in the patrol car.

Following the State's evidence, the parties made closing arguments, with Westgate arguing that because the stop was initially a welfare check, as soon as the officer saw Westgate was alive and able to stand, the officer should have simply turned around and left the scene. The district court rejected this notion, explaining that although Westgate woke up, the officer acted reasonably to inquire further because of the expired tag.

The district court denied the motion to suppress. At the same hearing, the court also granted a motion by the State to deem Westgate's statements to the officer—prior to his arrest and a *Miranda* warning—freely and voluntarily made.

*Westgate's Waiver of Jury Trial and Stipulated Facts*

In October 2023, a few months after the district court denied Westgate's suppression motion, the parties filed "Defendant's waiver of jury trial and agreement to submit the matter for trial via stipulated facts." In relevant part, the waiver identified the rights Westgate was waiving and noted his understanding of those rights and the voluntariness of the waiver:

5

"1. The defendant knowingly and voluntarily waives his right and request for jury trial and gives up the following rights that he would have if he had a trial by jury and further understands that he only retains more limited rights to a trial to the Court:

"a. The right to be presumed innocent/ not guilty by a jury, though he retains the right to be presumed innocent by the Court.

"b. The right to a speedy trial before a jury.

"c. The right to be represented by an attorney during the jury trial, though he retains the right to be represented by an attorney in the trial to the Court.

. . . .

"d. The right to require the State of Kansas to prove, beyond a reasonable doubt, all of the charges against him by a unanimous verdict of jurors, whom he could help select, though he does retain the right to require the State of Kansas to prove, beyond a reasonable doubt, all of the charges against him in a trial to the Court.

"e. The right to compel the attendance of witnesses and to call these witnesses to testify on his behalf at a jury trial. He also waives this right in the trial to the Court due to proceeding on the below stipulated facts alone.

"f. The right to compel production of documentary and physical evidence at a jury trial. He also waives this right in the trial to the Court due to proceeding on the below stipulated facts alone.

"g. The right to testify on his own behalf, and the right to not testify, if he chooses not to do so, and that fact could not be used against him at trial. He also waives this right in the trial to the Court due to proceeding on the below stipulated facts alone."

The Waiver also stated that Westgate agreed that "there is sufficient evidence to establish each charge," to submit the matter on the included stipulated facts, and to admit into evidence the officer's in-car video and the KBI lab report showing the contents of the plastic bag tested positive for methamphetamine. The waiver noted Westgate "makes a timely objection and reserves the right to appeal the Court's ruling on his [suppression] motion." The waiver was signed by Westgate, his attorney, and the attorney for the State.

On November 3, 2023, the district court held a bench trial on the stipulated facts. Immediately after acknowledging Westgate's preservation of his right to appeal and the

denial of the motion to suppress, the district court found Westgate guilty of all six counts. The presiding judge never interacted directly with Westgate. At a later proceeding, the district court sentenced Westgate to 30 months in prison and 6 months in county jail, which it suspended and ordered Westgate to serve up to 18 months in a drug treatment program pursuant to K.S.A. 21-6824, followed by 12 months of post-release supervision.

Westgate appealed.

## DISCUSSION

Westgate asserts two claims of error on appeal. First, Westgate contends the district court failed to advise him of the right to a jury trial and to obtain a voluntary waiver which violated his fundamental right, and, second, that the court erred in denying his motion to suppress.

## I. JURY TRIAL WAIVER

Westgate argues the district court failed to advise him of his right to a jury trial, which warrants reversal of his convictions. Although Westgate did not raise this issue to the district court, this court recognizes that the general prohibition against raising issues for the first time on appeal is subject to several exceptions. See *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022) (outlining the exceptions). The Kansas Supreme Court has long recognized that the right to a jury trial is a fundamental right that meets at least one of the exceptions and can be fairly reviewed for the first time on appeal. See *State v. Redick*, 307 Kan. 797, 802, 414 P.3d 1207 (2018) (applying an exception to a claim that a criminal defendant's jury trial waiver was inadequate); *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 (1975) ("The right of a criminal defendant to be tried by a jury of his peers, rather than by the court alone, is 'fundamental to the American scheme of justice.'").

7

The State concedes this court's ability to review Westgate's claim for the first time on appeal but argues Westgate's decision to proceed by bench trial was strategic; and thus this court can presume a knowing, voluntary waiver. However, the State provides no legal support for its contention that this court can presume a valid waiver under these circumstances. "If the district court fails to properly advise a defendant of the nature and extent of his or her constitutional right to a jury trial, how does that defendant know to object to the court's failure to inform, *i.e.*, how does the defendant know what the defendant does not know?" *State v. Frye*, 294 Kan. 364, 370-71, 277 P.3d 1091 (2012). Therefore, this court will review Westgate's argument for the first time on appeal to prevent the denial of his fundamental right to a jury trial.

The Sixth Amendment to the United States Constitution and sections 5 and 10 of the Kansas Constitution Bill of Rights guarantee criminal defendants in particular cases the right to a jury trial. *State v. Bentley*, 317 Kan. 222, 230, 526 P.3d 1060 (2023). This guarantee includes the right to have the jury determine whether the defendant is guilty beyond a reasonable doubt of every element of the charged crime. 317 Kan. at 230. The Sixth Amendment right to a jury trial (applied to the states through the Fourteenth Amendment) does not attach to every criminal case, but only those where the defendant is accused of a "serious crime[ ]," which is "any offense where imprisonment for more than six months is authorized." *Irving*, 216 Kan. at 589 (citing *Duncan v. Louisiana*, 391 U.S. 145, 161, 88 S. Ct. 1444, 20 L.Ed.2d 491 [1968]). Westgate makes no argument that the right to a jury trial pursuant to the Kansas Constitution applies more broadly or differently than the Sixth Amendment right.

A defendant may waive their fundamental right to a jury trial, but the waiver must be constitutionally sufficient. *Bentley*, 317 Kan. at 230. A sufficient waiver requires an advisory from the court of the defendant's right to a jury trial. *Irving*, 216 Kan. at 590. Only after being advised by the court of the right will the defendant's personal waiver of the right, either in writing or on the record in open court, be deemed sufficient. 216 Kan.

8

at 590. Thus, the district court has two duties related to this fundamental right before it may proceed by bench trial: "First, the judge must clearly and unequivocally advise the defendant that they have the right to have their case tried by a jury," and if the defendant wants to waive that right, then, second, "the judge must ascertain whether the waiver is made freely and voluntarily." *State v. Harris*, 311 Kan. 371, 376, 461 P.3d 48 (2020).

When the facts surrounding the district court's decision to accept a jury trial waiver are undisputed, whether the defendant knowingly and voluntarily waived their right to a jury trial is a question of law subject to unlimited appellate review. 311 Kan. at 375. In conducting this review, appellate courts must be "mindful that 'jury trial waivers should be strictly construed to ensure the defendant has every opportunity to receive a fair and impartial trial by jury.'" 311 Kan. at 376 (quoting *Redick*, 307 Kan. at 803). The parties do not dispute the facts surrounding the jury trial waiver, so this court exercises unlimited review on the question of whether Westgate acted knowingly and voluntarily. *Harris*, 311 Kan. at 376.

Here, the district court acknowledged Westgate's written jury trial waiver filed with the court, preserved Westgate's right to appeal the denial of his suppression motion, and then found Westgate guilty of all six counts. The record does not show any interaction between the court and Westgate before the court adjudicated him guilty. The district court did not advise Westgate of his right to a jury trial or ask if Westgate wanted to waive that right. On those facts alone, it appears the district court violated Westgate's right to a jury trial. The State concedes the district court erred by not discussing the waiver directly with Westgate.

The State maintains the written waiver is proof that Westgate knowingly and voluntarily waived his right. The waiver in this case is more complete than those discussed in other cases, including *Frye*. See *Frye*, 294 Kan. at 373 (the defendant submitted an undated handwritten document waiving Frye's right to a jury trial that did

9

not indicate he understood the rights waived). Indeed, the facts here differ from most cases addressing this issue. The waiver here more completely describes the rights at issue in a jury trial waiver than some oral recitations that the Kansas Supreme Court has upheld as sufficient. See *State v. Beaman*, 295 Kan. 853, 861, 286 P.3d 876 (2012)*; State v. Clemons*, 273 Kan. 328, 45 P.3d 384 (2002).

In *Clemons*, on the morning of his scheduled jury trial, the defendant sought to fire his counsel and represent himself. The district court explained that if Clemons wanted to fire his counsel and seek a continuance, Clemons would not be granted another date for a jury trial, and asked if he was deciding to give up his "'right to a jury trial.'" 273 Kan. at 337. The Kansas Supreme Court pointed to this conversation as well as the fact that it occurred while the jury venire was already present in the courtroom to find Clemons knowingly and voluntarily waived his right to a jury trial under the totality of the circumstances. 273 Kan. at 339-41. There was no evidence that Clemons was notified of any specific rights associated with that waiver.

In *Beaman*, the district court talked extensively with the defendant about his desire to proceed with a bench trial—even telling him that his chances were likely better in front of a jury because "'a lot of us [judges] are old guys who have been around a long time and we've seen a lot of things. And after you hear a lot of cases, you get to be kind of maybe even a little bit prosecution oriented.'" 295 Kan. at 854. Even though the district court discussed the benefit of a jury trial, it never explicitly told Beaman he had the *right* to a jury trial. 295 Kan. at 860. Nonetheless, the Kansas Supreme Court found that "the district court's use of the word 'waiver,' telling Beaman he would be better off with a jury, and the thoughtful exchange between the court and the defendant" showed the "district court communicated that Beaman had a right he would be relinquishing"; and their dialog "confirmed that the judge and defendant were talking about the same thing, *i.e.*, Beaman's right and the abandonment of that right." 295 Kan. at 861.

10

The parties agree that the right to a jury trial must be waived knowingly and voluntarily, which is determined by the circumstances surrounding the waiver. *Beaman*, 295 Kan. at 858. Here, Westgate's written waiver identified far more rights that attend a jury trial, and thus that Westgate agreed to waive, than the district courts had presented to the defendants in *Beamon* and *Clemons*—where the Kansas Supreme Court found the waivers sufficient. The waiver also states that Westgate "knowingly and voluntarily waives his right and request for jury trial and gives up the following rights that he would have if he had a trial by jury." Additionally, the waiver is file stamped with a date, typed, and signed by Westgate, his attorney, and the prosecutor. Finally, rather than being presented with these rights on the verge of trial, or in conjunction with other trial decisions regarding representation, Westgate had the opportunity to review these rights without the pressure or time constraints of open court. However, there is nothing in the record—other than the lengthy, thorough, signed waiver—stating that Westgate understood his right to a jury trial or the waiver.

At the trial, Westgate's counsel renewed the objection to the entry of evidence consistent with the previously filed motion to suppress and noted the "stipulation of facts and waiver of jury trial" for preservation purposes. The court noted the filing. Neither of the parties nor the court made any other mention of Westgate's jury trial rights or the waiver. It is not the waiver's lack of completeness or detail that makes this court unable to find Westgate knowingly and voluntarily waived his jury trial right, but the district court's failure to address it with Westgate on the record.

The Kansas Supreme Court has imposed a two-part test to determine the sufficiency of a jury trial waiver, with the first part requiring the district court—not any other party or entity—to inform the defendant of their right to a jury trial. See *Frye*, 294 Kan. at 373 ("Notwithstanding the efficacy of the handwritten waiver, however, the State fails to clear the *Irving* hurdle that requires that the written waiver be *after* the defendant is 'advised *by the court* of his right to a jury trial.'"); *Irving*, 216 Kan. at 590 (there can be

11

no waiver without district court's advisement of right on the record). Although the written jury trial waivers found to be insufficient by panels of this court are not nearly as robust as Westgate's waiver here, according to the prevailing precedent, even the most complete written waiver is insufficient if there is no oral exchange between the defendant and the court on the record about the right to a jury trial. See *Frye*, 294 Kan. at 371 (district court did not advise defendant of right and made no effort to ascertain whether written waiver was valid). See also *State v. Johnson*, 46 Kan. App. 2d 387, 398-00, 264 P.3d 1018 (2011) (finding written waiver insufficient and noting that "the written waiver must indicate that the defendant was first advised by the court of this constitutional right in order to be effective"); *State v. Duncan*, 44 Kan. App. 2d 1029, 1038, 242 P.3d 1271 (2010) (court must advise defendant); *State v. Bowers*, 42 Kan. App. 2d 739, 741, 216 P.3d 715 (2009) (stating that defense counsel cannot waive a defendant's fundamental rights)

Accordingly, the district court did not obtain a constitutionally sufficient jury trial waiver before proceeding to the bench trial on stipulated facts. Under Kansas law, a denial of the right to a jury trial through the failure to obtain a sufficient jury trial waiver is structural error requiring reversal. *Bentley*, 317 Kan. at 232. When this court determines that a defendant's conviction must be reversed for the failure to obtain a constitutionally sufficient jury trial waiver, the case is remanded so that the defendant may "either exercise that right or properly waive it." *Harris*, 311 Kan. at 377.

Still, the constitutional right to a jury trial only applies to charges for serious—not petty—offenses. *Irving*, 216 Kan. at 589. Westgate's five misdemeanor charges each carried a potential jail sentence of fewer than six months, and thus they did not include a constitutionally protected right to a jury trial. 216 Kan. at 589; *State v. Woolverton*, 52 Kan. App. 2d 700, 702, 371 P.3d 941 (2016). Thus, the reversible error only extends to Westgate's conviction of possession of methamphetamine.

Therefore, Westgate's conviction for possession of methamphetamine is reversed and his case remanded to the district court so that he may be advised of his jury trial right and either exercise such right or waive it in a constitutionally sufficient manner.

## II. DENIAL OF SUPPRESSION MOTION

Westgate next argues that the district court erred in denying his motion to suppress and permitting the evidence to be used against him. Westgate contends that the paraphernalia and open container of alcohol found in the car and the methamphetamine found in his wallet should have been suppressed because law enforcement unreasonably conducted a warrantless inventory search. While this court has already found reversal and remand is required based on Westgate's first claimed error, it will nonetheless consider this second issue in the interest of judicial economy. See *State v. Ibarra*, 307 Kan. 431, 433, 411 P.3d 318 (2018) (judicial economy); *State v. Chavez-Majors*, 54 Kan. App. 2d 543, 552, 402 P.3d 1168 (2017), *aff'd in part and remanded* 310 Kan. 1048, 454 P.3d 600 (2019).

On appeal, this court reviews the facts underlying the district court's denial of a motion to suppress for substantial competent evidence, and reviews the legal conclusion drawn from those facts de novo. *State v. Shelton*, 278 Kan. 287, 292, 93 P.3d 1200 (2004). When there is no dispute as to the facts, "'the ultimate determination of suppression is a legal question requiring this court's independent constitutional appraisal of the effects of those facts.' *State v. Morris*, 276 Kan. 11, 15, 72 P.3d 570 (2003)." *Shelton*, 278 Kan. at 292. In cases involving warrantless searches of impounded vehicles, the State "has the burden of proving that the impoundment was reasonable under the totality of circumstances." *Shelton*, 278 Kan. at 293.

In support of his argument, Westgate argues only that police should have left the car parked on the side of the highway or allowed Westgate to have someone tow it. On

13

appeal, Westgate does not argue—as he did in the original motion to suppress—that the officer who approached his car lacked reasonable suspicion to turn a welfare check into an investigatory stop. Having failed to reprise the argument on appeal, Westgate has waived or abandoned this argument on appeal. *State v. Smith*, 315 Kan. 717, 724, 510 P.3d 696 (2022).

Therefore, this court will only address Westgate's argument that law enforcement wrongly impounded his vehicle. Westgate contends that the officer should have left the car parked on the highway on-ramp because he told the officer that someone was coming to tow the car.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Generally, a warrantless search and seizure of evidence is unreasonable unless an exception to the warrant requirement applies. *State v. Teeter*, 249 Kan. 548, 550, 819 P.2d 651 (1991). One such exception is an inventory car search when an officer has lawfully impounded a car. 249 Kan. at 550. Warrantless searches of lawfully impounded cars "serve three purposes: the protection of the owner's property while it remains in police custody, the protection of the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger." 249 Kan. at 550. While the Fourth Amendment protects against unreasonable search and seizure, it "does not require police to allow an arrested person to arrange for the disposal or removal of his or her vehicle to avoid impoundment." *Shelton*, 278 Kan. at 293. Even so, a prerequisite to a permissible warrantless search of an impounded car is that law enforcement has lawful possession of the car. *Teeter*, 249 Kan. at 550-51.

The Kansas Supreme Court has recognized six circumstances that may give rise to reasonable grounds to impound a vehicle: (1) an unattended car illegally parked or otherwise obstructing traffic; (2) an unattended car from the scene of an accident when the driver is physically or mentally incapable of deciding how to deal with the car; (3) a

14

car that has been stolen or when its retention as evidence is necessary; (4) an abandoned car; (5) a car so mechanically defective as to be a menace to others using the public highway; and, (6) a car impoundable pursuant to ordinance or statute. *Shelton*, 278 Kan. at 294. This list is non-exhaustive. The ultimate question is whether it was reasonable to impound the car under the totality of the circumstances. An officer asking the driver what they would like to do with the car "is but one of the circumstances that is considered in the court's determination of whether the impoundment is reasonable." 278 Kan. at 293.

The district court noted two reasons supporting the reasonableness of impounding—the car's expired tags and Westgate's arrest warrant. Additionally, Westgate had a suspended driver's license and no car insurance. While these reasons demonstrate that Westgate could not move the car himself, even if law enforcement had been willing to allow him to do so, other circumstances support the reasonableness of impounding the car rather than leaving it for someone else to retrieve.

Although Westgate told the officer he contacted a tow company for the car, there was evidence undermining Westgate's contention. Westgate did not have a phone with him and gave evasive answers about how he contacted the tow company and when it would arrive. Westgate could not verify the tow company's arrival time—or even that he had contacted them. The car was not legally parked in a location intended for parked cars. Rather, it was sitting on the side of a highway on-ramp. While the car was not blocking traffic, its presence logically created a condition making the on-ramp conditions less safe. Finally, officers were unable to roll the car windows up causing concern that the car's contents, including the air rifle and Westgate's wallet, would be left unsecured.

The officer testified that based on his concern that nobody was coming to retrieve the car, he decided to tow the car. However, if someone had shown up before the car was towed, the officer would have allowed them to move the car. Law enforcement's decision to impound the vehicle was reasonable under the totality of the circumstances.

15

Westgate only argues on appeal that the car should never have been impounded—not that the following inventory search was conducted unlawfully. Accordingly, the district court did not err in denying Westgate's motion to suppress.

CONCLUSION

The district court's failure to advise Westgate of his right to a jury trial on the record and obtain a waiver therefrom—despite Westgate's submission of a thorough, signed waiver of these rights stating his knowing understanding—constitutes a failure to obtain a constitutionally sufficient jury trial waiver. Therefore, Westgate's conviction for possession of methamphetamine, the only charge for which Westgate maintained a right to a jury trial, is reversed and remanded. However, based on Westgate's claims on appeal, the district court did not err in denying Westgate's motion to suppress. Therefore, on remand the district court must either obtain a constitutionally sufficient jury trial waiver or conduct a jury trial and is not restricted by the motion to suppress in the evidence it may consider.

Affirmed in part, reversed in part, and remanded with directions.